## HIGHLAND FARMS DAIRY, INC., ET AL. *v.* AGNEW ET AL.

No. 573.   Argued March 8, 9, 1937.—Decided March 29, 1937.

*Messrs. Philip Rosenfeld* and *Lawrence Koenigsberger,* with whom *Messrs. Morris Simon* and *Eugene Young* were on the brief, for appellants.

*Mr. Edwin H. Gibson,* Assistant Attorney General of Virgina, and *Mr. John S. Barbour,* with whom *Mr. Abram P. Staples,* Attorney General, was on the brief, for appellees.

MR. JUSTICE CARDOZO delivered the opinion of the Court.

A statute of Virginia, known as the "Milk and Cream Act," is assailed by the appellants as invalid both under the Constitution of Virginia and under that of the United States.

The act is chapter 357 of the Laws of 1934. It recites the existence of demoralizing trade practices in the dairy industry, threatening to interrupt the supply of pure and wholesome milk for the inhabitants of the Commonwealth and producing an economic emergency so acute and destructive as to call for corrective measures. It establishes

a Milk Commission with power to create within the state natural market areas, and to fix the minimum and maximum prices to be charged for milk and cream therein. It authorizes the Commission to exact a license from distributors subject to the act, and provides that in the absence of such a license sales shall be unlawful within the market areas. It imposes taxes or fees for the support of the Commission and of local milk boards which are to be created to coöperate with the Commission in making the plan effective. It warns (§ 14) that none of its provisions "shall apply or be construed to apply to foreign or interstate commerce, except in so far as the same may be effective pursuant to the United States Constitution and to the laws of the United States enacted pursuant thereto." Finally it provides (§ 16) that "if any section, clause, or sentence or paragraph shall be declared unconstitutional for any reason, the remainder of the act shall not be affected thereby." A fuller summary of the statute is given in the opinion of the court below (16 F. Supp. 575), to which reference is made. Other provisions will be noted in this opinion later.

The suit is for an injunction to restrain the members of the Commission from enforcing the statute or the regulations made thereunder. One of the two plaintiffs (Highland Farms Dairy, Incorporated), which will be spoken of as "Highland," has a creamery for the pasteurizing and treatment of milk at Washington in the District of Columbia. For that purpose it buys milk from farmers in Virginia and Maryland. Its entire output of bottled milk it sells to the other plaintiff, Luther W. High, who has retail stores in Virginia and elsewhere for the sale of ice cream, milk and other dairy products. A regulation adopted by the Commission on March 27, 1936, set up a market area, described as the Arlington-Alexandria Milk Market, within which High is engaged in business. Mini-

mum prices prescribed for that area are in excess of the prices at which Highland had been selling to High and at which High had sold to the consumers. Each went on selling at the old prices. Neither made application for a license. In June, 1936, the Commission gave notice to High that it would proceed against him for an injunction if he refused compliance with its orders. No proceedings against Highland were begun or even threatened, the Commission taking the position that Highland was not subject to the prohibitions of the statute, its sales and purchases in Virginia being transactions in interstate commerce. In spite of this disclaimer, Highland joined with High in suing to enjoin the enforcement of the Act. A District Court of three judges, organized in accordance with § 266 of the Judicial Code (28 U. S. C. § 380), gave judgment for the defendants, with a comprehensive opinion to which little can be added. 16 F. Supp. 575. The case is here upon appeal. 28 U. S. C. § 380.

The power of a state to fix a minimum price for milk in order to save producers, and with them the consuming public, from price cutting so destructive as to endanger the supply, was affirmed by this court in *Nebbia* v. *New York,* 291 U. S. 502, and in other cases afterwards. *Hegeman Farms Corp.* v. *Baldwin,* 293 U. S. 163; *Borden's Farm Products Co.* v. *Ten Eyck,* 297 U. S. 251. Appellants are not asking us to undo what was there done. They take the ground, however, that the statute of Virginia is open to objections that were inapplicable to the statute of New York. The present grounds of criticism will be considered one by one.

1. The statute is not invalid as an unlawful delegation of legislative power.

The General Assembly of the Commonwealth in setting up the Milk Commission did not charge it with a duty to prescribe a scale of prices in every portion of the state.

The Commission was to establish market areas, and with reference to each area was to determine, after a public hearing, whether there was need within such area that prices should be regulated. If it was satisfied of the need, it was to fix a scale accordingly. The argument for the appellants is that in this there was a grant of discretionary power overpassing the limits of lawful delegation.

The Constitution of the United States in the circumtances here exhibited has no voice upon the subject. The statute challenged as invalid is one adopted by a state. This removes objections that might be worthy of consideration if we were dealing with an act of Congress. How power shall be distributed by a state among its governmental organs is commonly, if not always, a question for the state itself. Nothing in the distribution here attempted supplies the basis for an exception. The statute is not a denial of a republican form of government. Constitution, Art. IV, § 4. Even if it were, the enforcement of that guarantee, according to the settled doctrine, is for Congress, not the courts. *Pacific States Telephone Co.* v. *Oregon*, 223 U. S. 118; *Davis* v. *Hildebrant*; 241 U. S. 565; *Ohio ex rel. Bryant* v. *Akron Park District*, 281 U. S. 74, 79, 80. Cases such as *Panama Refining Co.* v. *Ryan*, 293 U. S. 388, and *Schechter Poultry Corp.* v. *United States*, 295 U. S. 495, cited by appellants, are quite beside the point. What was in controversy there was the distribution of power between President and Congress, or between Congress and administrative officers or commissions, a controversy affecting the structure of the national government as established by the provisions of the national constitution.

So far as the objection to delegation is founded on the Constitution of Virginia, it is answered by a decision of the highest court of the state. In *Reynolds* v. *Milk Commission*, 163 Va. 957; 179 S. E. 507, the Supreme Court of Appeals passed upon the validity of the statute now in

question. The Commission sued distributors to enjoin them from selling milk at a price lower than the prescribed minimum, and the injunction was granted against the defendants' objection that the statute was invalid. Upon appeal to the Supreme Court of Appeals the judgment was affirmed. To escape the force of that decision the argument is made that the question of unlawful delegation was not considered or decided. But the contrary is plainly indicated both in the opinion of the court and in that of its dissenting members. The prevailing opinion summarizes the arguments against the act, and among them is this (163 Va. at p. 976), that there is "the delegation to the Commission of the power to enact legislation which is both prohibitory and penal in character and which will be operative only in such areas as the Commission may define." The dissenting opinion says (p. 980): "The Commission may order milk to be sold at one price in Staunton, at another in Harrisonburg and may leave Woodstock to shift for itself." These statements are too clear to leave room for misconstruction. A judgment by the highest court of a state as to the meaning and effect of its own constitution is decisive and controlling everywhere.

2. The statute is not invalid in its present application by reason of a provision for the cancellation of the prices established for a market, if cancellation is requested by a majority of the producers and distributors in the area affected.[1]

The argument is made that the effect of that provision is to vest in unofficial agencies, capriciously selected, a power of repeal to be exercised at pleasure. The case

---

[1] The provision (§ 3 (i)) reads as follows: "The commission shall withdraw the exercise of its powers from any market upon written application of a majority of the producers (measured by volume) of milk produced and a majority of the distributors (measured by volume of milk distributed) in said market acting jointly."

of *Eubank* v. *Richmond,* 226 U. S. 137, is cited for the proposition that this cannot be done consistently with the Fourteenth Amendment of the Federal Constitution. Delegation to official agencies is one thing, there being nothing in the concept of due process to require that a particular agency shall have a monopoly of power; delegation to private interests or unofficial groups with arbitrary capacity to make their will prevail as law may be something very different. Cf., however, *Cusack Co.* v. *Chicago,* 242 U. S. 526, 531. Such is the appellants' argument when its implications are developed.

Without acceptance or rejection of the distinction in its application to this statute, we think it is enough to say that the power of cancellation has not been exercised or even threatened. The controversy in that regard is abstract and conjectural. *Abrams* v. *Van Schaick,* 293 U. S. 188. Moreover, if a provision so subordinate were at any time to fail, the saving clause in § 16 would cause the residue to stand.

3. The statute does not lay a burden on interstate commerce.

Argument to the contrary is built upon the definition of the word "distributor" contained in § 1. We learn from that section that distributors include "persons wherever located or operating, whether within or without the Commonwealth of Virginia, who purchase, market, or handle milk for resale as fluid milk in the Commonwealth of Virginia." This definition, we are told, takes in the plaintiff Highland, who buys milk and sells it in interstate commerce, and does so with the expectation that upon arrival in Virginia the milk will be resold. But Highland is not subject to the provisions of the act, and so the Milk Commission has ruled. No matter what the definition of a distributor may be, sales are not affected by any restriction as to price unless made

within the boundaries of a designated market area. The sections quoted in the margin point fairly to that conclusion.[2] Highland in Washington may sell to High in Virginia, and High may buy from Highland, at any price they please. Not till the milk is resold in Virginia within a market area will the price minimum apply, and then only to the price to be charged on the resale. Cf. *Wiloil Corp.* v. *Pennsylvania,* 294 U. S. 169, 175; *Sonneborn Bros.* v. *Cureton,* 262 U. S. 506; *Baldwin* v. *G. A. F. Seelig, Inc.,* 294 U. S. 511. If there could be any doubt about this as a matter of construction, the doubt would be dispelled by the administrative practice and by the warning of the statute, expressed in § 14, that operations in interstate commerce shall not be deemed to be affected. So

---

[2] Sec. 3, subd. j: "The commission, after public hearing and investigation, may fix the prices to be paid producers and/or associations of producers by distributors in any market or markets, may fix the minimum and maximum wholesale and retail prices to be charged for milk in any market, and may also fix different prices for different grades of milk. In determining the reasonableness of prices to be paid or charged in any market or markets for any grade, quantity, or class of milk, the commission shall be guided by the cost of production and distribution, including compliance with all sanitary regulations in force in such market or markets, necessary operation, processing, storage and delivery charges, the prices of other foods, and the welfare of the general public."

Sec. 3, subd. k: "The commission may require all distributors in any market designated by the commission to be licensed by the commission for the purpose of carrying out the provisions of this act. The commission may decline to grant a license, or may suspend or revoke a license already granted upon due notice and after a hearing. The commission may classify licenses, and may issue licenses to distributors to process or store or sell milk to a particular city or village or to a particular market or markets within the Commonwealth."

Sec. 1, par. II: " 'Market' means any city, town or village of the Commonwealth, or two or more cities and/or towns and/or villages and surrounding territory designated by the commission as a natural marketing area."

also as to the requirement of a license expressed in § 4.[3] High needs a license to the extent that he sells at retail to consumers in Virginia. Highland does not need one, and the Commission is not asking it to apply for one, because its business as now conducted with persons in Virginia is interstate exclusively. Clumsy draftsmanship may have spread a fog about the section when viewed in isolation or taken from its setting. The fog scatters when we recall the provisions of § 14 and the administrative practice. Appellants' fears are visionary.

4. The statute is not invalid for failing to prescribe the standards to be applied by the Commission in granting licenses or refusing them.

The obvious purpose of the license is to provide the Commission and the members of the local boards with a record of the distributors and producers subject to the act. Supervision and enforcement are thus likely to be easier. No inference is permissible that any one was intended to be excluded because of favor or caprice. *Lieberman* v. *Van De Carr*, 199 U. S. 552. Indeed the statute makes provision (§ 6) that an order refusing to issue a license, or suspending or revoking one, may be reviewed on appeal to the Supreme Court of Appeals. There is sedulous protection against oppression or abuse of power. One who is required to take out a license will not be heard to complain, in advance of application, that there is danger of

---

[3] The section reads as follows: "No distributor in a market in which the provisions of this act are in effect shall buy milk from producers, or others, for sale within the Commonwealth, or sell or distribute milk within the Commonwealth, unless such distributor is duly licensed under the provisions of this act. It shall be unlawful for a distributor to buy milk from or sell milk to a distributor who is not licensed as required by this act. It shall be unlawful for any distributor to deal in, or handle milk if such distributor has reason to believe it has previously been dealt in, or handled, in violation of the terms and provisions of this act."

refusal. *Lehon* v. *Atlanta*, 242 U. S. 53, 56; *Smith* v. *Cahoon*, 283 U. S. 553, 562. He should apply and see what happens.

Other arguments against the act are implicit in the arguments already summarized and answered. Expansion of the answer will serve no useful purpose.

The decree is

*Affirmed.*

Mr. Justice Van Devanter, Mr. Justice McReynolds, Mr. Justice Sutherland and Mr. Justice Butler do not assent to so much of the opinion as attributes to the State a power to fix minimum and maximum prices to be charged in the sale of milk, their views on this question being reflected by what was said on their behalf by Mr. Justice McReynolds in *Nebbia* v. *New York,* 291 U. S. 502, 539–559. In other respects they concur in the opinion.