## Commonwealth v. Phillips et al.

*Aaron S. Swartz, 3rd,* for Commonwealth.

*David E. Groshens* and *Hayden C. Covington,* for appellant.

DANNEHOWER, J., October 20, 1950.—This is an appeal from a summary conviction in which defendants, who are members of a religious sect known as Jehovah's Witnesses, were found guilty of failing to register before beginning house-to-house missionary work and solicitation, as a borough ordinance required.

On August 1, 1949, the Borough of Lansdale adopted an ordinance designated no. 388, which provides for the registration and licensing of hawkers, peddlers, transient merchants, entertainers, and solicitors who wish to engage in their calling within the borough limits. A schedule of fees is set forth in the ordinance, but there is also a provision that those who are engaged in the noncommercial dissemination of economic, political, cultural or religious information will not be required to pay any fee, but need only give to the police their names, ages, and residences. The license is then issued as a matter of course, there being no provision for its refusal.

On October 3, 1949, ordinance no. 389 was passed, which amended no. 388 slightly by adding a prohibition against distributing advertisements or mechandise in such a way that the streets would become littered.

Ordinance no. 388, as amended, was in full force and effect on December 18, 1949, when defendants, who are members of Jehovah's Witnesses, with about 25 others of the same faith, came to the borough and began

evangelistic and missionary work from house to house. (See concurring opinion of Justice Jackson in Douglas et al. v. City of Jeanette, 319 U. S. 157, 166 (1943), for a description of this group and its methods of operation.) In the main this work consisted of summoning a householder to his door, showing to him certain leaflets, or pamphlets, all published by the Watch Tower Bible and Tract Society, of Brooklyn, N. Y., explaining these and the beliefs of this sect, and accepting a donation for the books. A donation is not required and the books may be left even though none is made. In the event that the home owner was antagonistic or requested the caller to leave, he did so without disturbance. On the other hand, if interest was shown, a note was made of the fact so that another call could be made at a future time. Each of the Jehovah's Witnesses visiting Lansdale that day is an ordained minister in the faith, which requires a training period of about 15 months, and almost all were members of a congregation which regularly meets in Lansdale and vicinity.

Defendants were discovered by the police after they had visited several homes without having registered. Defendants refused to fill out the registration form when given the opportunity to do so. An information was signed against them, they were tried before Magistrate Howard F. Boorse, of Lansdale, Pa., found guilty of not having obtained the license under the ordinance, sentenced to pay a fine of $5 and costs of $3.50, or be committed to the county prison for 30 days. Defendants were ably represented by counsel, who objected that the ordinance violated the defendants' constitutional rights, and when the magistrate ruled against him, this appeal followed and was allowed. A hearing de novo was held and over 100 pages of testimony were taken. Defendants have filed motions that the complaint be dismissed and they be found not guilty.

Defendants contend that the prosecution should be dismissed for these principal reasons which we shall consider separately:

I. In the first place, it is maintained that an ordinance which requires door-to-door preachers to register and obtain a permit has no relationship to the police power and is void on its face, because it abridges the rights of freedom of press, worship, and conscience contrary to the first and fourteenth amendments to the Constitution of the United States, and the Constitution of Pennsylvania.

The attention of the court has been invited to that portion of the borough's act which prohibits the distribution of pamphlets, advertising, and merchandise in such manner as will cause the streets to become littered. It is maintained on behalf of defendants that this provision is void for constitutional reasons and that therefore the whole ordinance must be declared a nullity. However, we have no occasion at this time to pass upon the validity of that section of the ordinance. So far as our record shows, that section of the act has not been applied to these defendants. Its effect is abstract and conjectural. As it is said in Lehon v. City of Atlanta, 242 U. S. 53 (1916) at page 56:

"To complain of a ruling one must be made the victim of it. One cannot invoke to defeat a law an apprehension of what might be done under it and, which if done, might not receive judicial approval."

See, also, Highland Farms Dairy, Inc., et al. v. Agnew et al., 300 U. S. 608, 614 (1937).

Moreover, this section is severable from the rest of the ordinance as is shown by the fact that it was added by amendment. Even were we to declare an opinion that it is unconstitutional, the balance of ordinance no. 388 could stand alone.

As originally enacted, and as applied to defendants, ordinance no. 388 requires only one thing—registra-

tion. Defendants contend that there is no relationship between it and the prevention of crime, or the apprehension of criminals, the basis upon which the borough justifies its passage. Futhermore, they say that Jehovah's Witnesses are not criminals and that their rights are interfered with by the registration requirement. These arguments do not persuade us that the act is void or illegal. Police work in a borough the size of Lansdale depends to a great extent on a knowledge of the people in the town. Strangers who enter the borough presumably do so for proper reasons, but there may be others from time to time whose motives are different. As it is pointed out in Martin v. City of Strothers, 319 U. S. 141 (1943) at 144:

"Burglars frequently pose as canvassers, either in order that they may have a pretense to discover whether a house is empty and hence ripe for burglary, or for the purpose of spying out the premises in order that they may return later."

Perhaps the potential criminal may not leave his real name with the police at the time of registration, but they will have seen him and will have a sample of his writing which is often more than police have to go on at the start of a case.

Chief Kenneth W. Lear, a veteran of 20 years on the Lansdale force, in his testimony before the magistrate pointed out that the ordinance had already helped his men identify one thief at a time when it had been in effect less than three months. It was the chief's opinion that the law was of real benefit in criminal work. Counsel for defendants argue there is no connection between the ordinance and crime prevention. He points out that automobiles are registered but accidents are not prevented. While that is true, the identification of those responsible in an accident is made easier by vehicle and driver registration. The Lansdale ordinance is not expected to prevent all crime but was designed

to make easier the job of identifying those at fault. From the evidence presented and from the experiences of other municipalities, we feel that the registration required by the Lansdale ordinance will aid in police work. Of course, it does not follow that the act is valid for it may violate the rights guaranteed by the Constitution.

The right to worship God and preach the Gospel according to one's conscience is not an absolute right to be enjoyed without regard for the rights and privileges of others, free of all restraint and responsibility. On the other hand, the freedom to believe and think on religious matters is absolute for no law can impose its will in the realm of the mind. But *actions* based upon *beliefs* are subject to regulation. However sincere the belief and great the zeal, the conduct involved may not always find shelter beneath the pavilion that is the first amendment. Proponents of ideas cannot choose the time, place and manner for their evangelism as though they lived in a vacuum, any more than the authorities may arbitrarily suppress the publication and dissemination of ideas which are contrary to their own. Neither a fanatical minority nor the representatives of a placid majority should be allowed freedom to injure the other. The balance necessary to protect rights of both may be difficult to obtain, yet municipal authorities must ever seek it.

The ordinance before the court is such an attempt. So far as defendants are concerned, three things are required by it—name, age, and residence. Considerably more information is required of a resident of this Commonwealth in order that he be permitted to drive an automobile. Could it be argued that one who drove a car exclusively in missionary and evangelistic work is exempt from our Vehicle Code because it restrains his rights under the first amendment? The question

suggests its answer, and yet, the contention of these Jehovah's Witnesses is that informing the police of their names, ages, and places of residence would hamper the freedom of worship guaranteed to all. As it is said in Dziatkiewicz v. Township of Maplewood, 115 N. J. L. 37, 178 Atl. 205 at page 42:

"It would seem to this court that men and women engaged in the lofty and idealistic work, as the prosecutors claim to have been engaged herein, i.e., of spreading their religious conceptions to the public at large, ought to be among the very first to submit to and comply with all reasonable regulations which, obviously, were enacted in the interest of the public health and safety and which regulations were designed for the good of the greatest number. There is no question here of prohibition; it is rather a simple question of reasonable police regulations; regulations which have for their purpose safeguards against those who are not so concerned with ideals and morals; a type, of which there are altogether too many, which resort to any guise, innocent or otherwise, in order to further their illegal schemes and objectives."

The Supreme Court of the United States has hinted that mere registration of those engaged in religious activity does not infringe upon constitutional rights. In Murdock v. Pennsylvania, 319 U. S. 105 (1943), the majority of the court speaking through Mr. Justice Douglas said, at page 110:

"There is presented for decision no question whatsoever concerning punishment for any alleged unlawful acts during the solicitation. Nor is there involved here any question as to the validity of a registration system for colporteurs and other solicitors. The cases present a single issue—the constitutionality of an ordinance, which as construed and applied requires religious colporteurs to pay a license tax as a condition to the pursuit of their activities".

At page 113 it is remarked:

". . . we have something very different from a registration system under which those going from house to house are required to give their names, addresses and other marks of identification to the authorities."

While on page 116, the following appears:

"As we have said, it is not merely a registration ordinance calling for an identification of the solicitors so as to give the authorities some basis for investigating strangers coming into the community."

In Cantwell et al. v. Connecticut, 310 U. S. 296 (1940) at page 304, the court points out:

"No one would contest the proposition that a State may not, by statute, wholly deny the right to preach or to disseminate religious views. Plainly such a previous and absolute restraint would violate the terms of the guarantee. It is equally clear that a State may by general and non-discriminatory legislation regulate the times, the places, and the manner of soliciting upon its streets, and of holding meetings thereon; and may in other respects safeguard the peace, good order and comfort of the community, without unconstitutionally invading the liberties protected by the Fourteenth Amendment."

On page 305 it continues:

"The general regulation, in the public interest, of solicitation, which does not involve any religious test and does not unreasonably obstruct or delay the collection of funds, is not open to any constitutional objection, even though the collection be for a religious purpose. Such regulation would not constitute a prohibited previous restraint on the free exercise of religion or interpose an inadmissible obstacle to its exercise."

And on page 306 the court adds:

"Without doubt a State may protect its citizens from fraudulent solicitation by requiring a stranger in the community, before permitting him publicly to so-

licit funds for any purpose, to establish his identity and his authority to act for the cause which he purports to represent."

See, also, Cox et al. v. New Hampshire, 312 U. S. 569 (1941), and City of Manchester v. Leiby et al., 117 F.(2d) 661 (1941).

Although two of the portions quoted for the Cantwell case use the term "regulation" and defendants maintain that mere registration does not provide for regulation, the statute there involved was essentially a registration statute and what the court said is applicable for that reason.

Our attention is called to Thomas v. Collins, 323 U. S. 516 (1945), which voided a Texas statute requiring paid labor organizers engaged in the solicitation of membership in a union to register and furnish name, union affiliation, and a copy of credentials. Thomas, a high CIO official, went to Texas to speak to a public meeting of refinery workers in order to urge them to join a CIO local. He purposefully violated the statute and the case finally came to the Supreme Court by appeal. In a 5-4 decision that court ruled the act unconstitutional as applied to Thomas.

Counsel for defendants here contends that by the same reasoning the Lansdale ordinance is unconstitutional. We do not agree. In the first place, Thomas spoke at a public meeting. That is vastly different than the practice of these defendants who went from house to house. The dangers we have mentioned in connection with burglars disguising themselves as solicitors would not be present where there is a public meeting. The Lansdale ordinance does not require registration before one may speak, but only registration before one may travel from house to house to solicit.

Moreover, the Texas statute in the Thomas case was applied to one who was only individuallly soliciting funds for the cause he espoused. His immediate plea

was for members. Although the Jehovah's Witnesses' selling activities are only an incident of the religious work (See Murdock v. Pennsylvania, supra, at page 112), the fact remains that they do ask for and receive money from a goodly share of those with whom they talk.

Mr. Justice Rutledge, who spoke for the majority in Thomas v. Collins, supra, pointed out the difference at page 540 in this way:

"We think a requirement that one must register before he undertakes to make a public speech to enlist support for a lawful movement is quite incompatible with the requirements of the First Amendment."

"Once the speaker goes further, however, and engages in conduct which amounts to more than the right of free discussion comprehends, as when he undertakes the collection of funds or securing subscriptions, he enters a realm where a reasonable registration or identification requirement may be imposed. In that context such solicitation would be quite different from the solicitation involved here."

Counsel for defendants contends that this registration requirement is a resort to extreme police measures and leaves the door open to the establishment of a police state. In that respect we note the remark that Mr. Justice Holmes made in Panhandle Oil Company v. Mississippi ex rel. Knox, 277 U. S. 218, 223 (1928), as he ridiculed the old maxim that the power to tax is the power to destroy by saying that the power to tax was *not* the power to destroy while the Supreme Court of the United States sits. The same is true of the registration of those who preach and solicit from door to door. Because we feel that no constitutional right is invoked and because the measure is related to valid police activity, the ordinance is not void upon its face.

II. Defendants' second argument is that as this ordinance is applied it abridges the right of free press

and worship contrary to the first and fourteenth amendments. This thought is based on the theory that the act, even though valid upon its face, is being used to deny the freedom guaranteed to the defendants. However, no such abuse of the law has been shown.

Much is made of the so-called right of the police to revoke the license, but there is no provision in the ordinance for revocation of any kind. Moreover, there has been no showing of any actual revocation, much less revocation of a license issued to any Jehovah's Witnesses. Before they can complain that the law is unlawfully enforced, it is necessary for them to show either that the possibility for such measure is within the law or by custom and usage has become part of it. Chief Lear's opinion as to what might be done by the police and those charged with enforcement is only an opinion, and only his at that.

III. Defendants' third position is much the same as their second, that the enforcement of the ordinance violates their rights to equal protection. It is based on the theory that the ordinance is not enforced uniformly and that all those who solicit from door to door may not come within its requirements.

This argument arises from the cross-examination of Chief Lear as to the way he interpreted the act, the way it was enforced in the past, and the way he thought it should be enforced. Chief Lear admitted that the solicitors for the Community Chest campaign, the Red Cross, and some political workers, had not been required to register. But there is good reason for this as counsel for the borough points out. The ordinance is aimed at nonlocal solicitors, and those who work for the Community Chest, Red Cross, and in politics are all local people. Those who work for local charities are exempt under section 3 of the ordinance because they are known to other residents. Absolute symmetry is not required in the law, and if those against whom it

discriminates are reasonably considered to be those from whom the evil is mainly feared, the classification is proper. The law may be directed against the main sources of the evil without covering the entire field of possible abuses: New York ex rel. Bryant v. Zimmerman et ux., 278 U. S. 63, 73 (1928). The Constitution requires a reasonable basis for differentiation: Goesaert et al. v. Cleary et al., 335 U. S. 464 (1948).

There is such a basis here. If an ordinance of the City of Philadelphia made a distinction between resident and nonresident solicitors' registration, there might be reason for saying that the discrimination was unfair. But the Borough of Lansdale is comparatively small in size and it is that fact which makes the difference. There is no unequal enforcement of the type which would warrant a holding that defendants' constitutional rights were invaded.

We therefore decide that a borough ordinance which forbids the sale or offering for sale of any goods, wares or merchandise from house to house within the borough limits, unless the person canvassing or soliciting has first procured a license to transact such business, and if engaged in the noncommercial dissemination of economic, political, cultural or religious information, shall not be required to pay a license fee and may automatically engage in such activities upon registration with the police department, giving his name, age and residence, if nondiscriminatory and not unreasonable, is not in violation of the constitutional rights of freedom of worship, freedom of speech, and freedom of the press, in its application to persons, members of a religious sect, who canvass for, solicit and sell from house to house, leaflets, pamphlets and books.

And now, October 25, 1950, for the reasons stated in the foregoing opinion, defendants' motion to dismiss the prosecution is refused and denied, and it is adjudged and decreed that Mrs. J. V. Phillips, Mrs. O. L.

Pillars and Allen Groman, defendants, are hereby found guilty as charged, each to pay a fine of $5 and the costs of prosecution.