**HALL OF DISTRIBUTORS, Inc.,**
**Plaintiff,**

v.

**Stanley BOWERS  et al., Defendants.**
**Civ. No. 7446.**

United States District Court
N. D. Ohio, W. D.
March 22, 1956.

Dan H. McCullough, Richard T. Secor, John J. Schuchmann, Toledo, Ohio, for plaintiff.

C. William O'Neill, Atty. Gen., State of Ohio, Kiehner Johnson, Asst. Atty. Gen., State of Ohio, Robert A. Fries, Prosecuting Atty., Bowling Green, Ohio, for defendants.

Before ALLEN, Circuit Judge, and KLOEB and CONNELL, District Judges.

PER CURIAM.

Plaintiff is a Michigan corporation authorized to do business in the State of Ohio and is engaged in sale, through the public auction method, of standard goods, including watches, electrical appliances, household goods, furniture, blankets, ironers, radios, television sets, washing machines, electrical driers, sporting goods and many other standard articles of jewelry and merchandise, not including diamonds.

Defendant Stanley Bowers is the Tax Commissioner of the State of Ohio, and the other defendants are County Officers of Wood County, Ohio, all charged with the duty, among other things, of administering and enforcing the various sections of Ohio law in Chapter 1318 of the Ohio Revised Code, which became effective October 11, 1955.

Prior to October 11, 1955, plaintiff rented a premise in the City of Bowling Green, Wood County, Ohio, and advertised an auction sale of new merchandise to be held on the night of October 12, 1955. On October 11, defendants notified plaintiff of their intention to prosecute plaintiff under the penalty provision of Section 1318.99, Revised Code if a public auction sale of new merchandise was conducted without compliance with Sections 1318.01 to 1318.07 of Chapter 1318. Plaintiff had made no application for license to conduct the sale.

Section 1318.02 requires a corporation which desires to conduct a new merchandise public auction sale to file with the County Auditor of the County in

which such sale is proposed to be held an application for a license not less than ten days prior to the date such sale is to be held. Certain information relative to the corporation is required to be furnished in the application. Prior to the filing with the County Auditor of the application, the applicant must send to the State Department of Taxation, by registered mail, a notice of intent to conduct such sale.

Section 1318.03 requires the applicant for license to give a penal bond to the State, approved by and filed with the Auditor of the County in which such sale is proposed to be held, in the sum of the value of the new merchandise described in the application, for the satisfaction of all judgments, tax assessments, or fines against the applicant arising out of or by reason of such sale and for which an action of prosecution is commenced within one year after such sale, or in the case of taxes, the assessment of which is within one year after such sale. The statute further requires that the applicant and surety shall appoint the County Auditor as their agent for the service of process in any civil suit arising out of or by reason of the sale.

Section 1318.04 requires a license fee in the sum of $10 per day for each day the sale is proposed to be conducted.

Section 1318.05 provides that the Auditor of the County in which a new merchandise public auction sale is proposed to be held shall issue to an applicant therefor a license for such sale upon compliance with Sections 1318.02 to 1318.04 and upon presentation of the receipt provided for in Section 1318.04.

Section 1318.06 requires the licensee to file in duplicate with the Auditor of the County in which such sale was held an inventory of all new merchandise sold at such sale and the price received therefor.

Section 1318.08 provides for certain exemptions from compliance with the Act and exempts a taxpayer who has filed a personal property tax return and has been assessed in the County in which the new merchandise is offered for sale by the taxpayer at his place of business. It requires such taxpayer to file with the County Auditor annually, and at least ten days prior to the first sale claimed to be exempt under the provisions of this section, an affidavit stating that such taxpayer or the consignor of such merchandise has filed a personal property tax return and has been assessed in the County in which the new merchandise auction sale is to be held. The statute further provides that a taxpayer who files such affidavit shall be the taxpayer within the meaning of Sections 5711.01 to 5711.99 of the Revised Code of Ohio, which are the sections of law which require a taxpayer to file annually a personal property tax return and pay a tax on all taxable personal property.

Plaintiff complains that the aforesaid sections of Ohio law under Chapter 1318 are violative of its rights and immunities under Section 2 of Article Four and under Amendment Fourteen, Section 1, of the Constitution of the United States, in that they set up standards which are vague and arbitrary and subject the complainant and its officers, agents, servants and employees to the arbitrary acts of the defendants and require of complainant standards which it cannot meet and which are not required of taxpayers in the State of Ohio who are taxpayers in the County of Wood; that the said sections of law are unconstitutional and void in that it is beyond the power of the Legislature of the State of Ohio to enact legislation which is discriminatory, stringent, oppressive and which, through its various provisions, places an unreasonable burden upon interstate commerce; that the enactment of the public auction sales law was not necessary to the health, morals, peace, convenience or safety of the citizens of the State of Ohio; that compliance with the Act would render the sales of new merchandise at public auction by the complainant uncertain and unprofitable, and that the said sections give to merchants

of Wood County, Ohio who are taxpayers therein special privileges and immunities not accorded to plaintiff.

Plaintiff asks that the complained of sections of the Revised Code of Ohio be declared unconstitutional and void, that the Court restrain the defendants from the enforcement of the law, and that pending the final hearing and determination of this cause the Court issue a temporary restraining order restraining the defendants from enforcing the said Act.

The complaint was accompanied with a motion for preliminary injunction and an affidavit in support thereof.

The nature of the complaint invoked the provisions of Sections 2281 and 2284 of Title 28 United States Code Annotated, and a three Judge Court was duly impaneled. The matter was heard and, by agreement of counsel, was submitted on its merits, on the pleadings, briefs, stipulations and proffers of evidence of the parties, with leave to defendants to file a motion to dismiss the complaint, which was done in due course. Defendants moved the Court to dismiss the complaint because plaintiff fails to state a claim against defendants upon which relief can be granted and the complaint does not state any substantial constitutional question.

Article IV, Section 2, of the Constitution of the United States reads as follows:

"The Citizens of each State shall be entitled to all Privileges and Immunities of Citizens in the several States."

The Fourteenth Amendment, Section 1, reads in part as follows:

" * * * No State shall make or enforce any law which shall abridge the privileges or immunities of citizens of the United States; nor shall any State deprive any person of life, liberty, or property, without due process of law; nor deny to any person within its jurisdiction the equal protection of the laws."

Plaintiff not having filed application for license to conduct a sale nor made any pretense at compliance with the provisions of Chapter 1318, we have given no consideration to its complaint that the Act sets up standards which it cannot meet and makes requirements which would render the sales of new merchandise at public auction by the complainant uncertain and unprofitable.

In the case of Smith v. Cahoon, 283 U.S. 553, at page 562, 51 S.Ct. 582, at page 585, 75 L.Ed. 1264, we find the following:

" * * * The appellant did not apply for a certificate, and the principle is well established that, when a statute, valid upon its face, requires the issue of a license or certificate as a condition precedent to carrying on a business or following a vocation, one who is within the terms of the statute, but has failed to make the required application, is not at liberty to complain because of his anticipation of improper or invalid action in administration. Gundling v. [City of] Chicago, 177 U.S. 183, 186, 20 S.Ct. 633, 44 L.Ed. 725; Lehon v. [City of] Atlanta, 242 U.S. 53, 55, 56, 37 S.Ct. 70, 61 L.Ed. 145; Hall v. Geiger-Jones Co., 242 U.S. 539, 553, 554, 37 S.Ct. 217, 61 L.Ed. 480. This principle, however, is not applicable where a statute is invalid upon its face and an attempt is made to enforce its penalties in violation of constitutional right. * * *"

This case is followed in Highland Farms Dairy, Inc., v. Agnew, 300 U.S. 608, 616, 57 S.Ct. 549, 553, 81 L.Ed. 835, where we find the following:

" * * * One who is required to take out a license will not be heard to complain, in advance of application, that there is danger of refusal. Lehon v. [City of] Atlanta, 242 U.S. 53, 56, 37 S.Ct. 70, 61 L.Ed. 145; Smith v. Cahoon, 283 U.S. 553, 562, 51 S.Ct. 582, 587, 75

L.Ed. 1264. He should apply and see what happens."

We believe that plaintiff should not be heard to complain that the sections of law set up standards which it cannot meet and that these sections render the sales of new merchandise at public auction by the complainant uncertain and unprofitable until it has made a try at it.

In the consideration of this case, we desire to follow certain well known principles of law applicable to a case of this nature which we find well defined in the case of Feldman v. City of Cincinnati, D.C., 20 F.Supp. 531:

1. The court has no right to consider or pass on the wisdom of legislation.

2. The police power of the state acting as an arm of the state is an attribute of sovereignty.

3. The validity of a statute passed in the exercise of police power depends primarily on whether it is reasonable or arbitrary.

4. The fact that the court differs with the Legislature in its views of public policy or holds views inconsistent with the propriety of legislation affords no ground for judicial interference therewith, unless the act is unmistakably and palpably in excess of legislative power; the Legislature being primarily the judge of necessity of enactments respecting local conditions.

5. A statute is presumed to be valid and the burden is on the parties attacking it as violating the due process clause of the Fourteenth Amendment to show that its provisions are so clearly unreasonable and arbitrary as to deprive them of their property without due process of law.

6. The court will not substitute its judgment for legislative discretion, in the absence of clear and palpable abuse of legislative power.

7. Every possible presumption is in favor of the validity of a statute or statutes in question until the contrary is shown beyond rational doubt.

We desire also to proceed on the premise that the business of the auction sale of merchandise is one that requires public supervision so that purchasers will not be imposed on or the owners of property sold at auction defrauded, and that the State, in the exercise of its police power, may limit or qualify this right. This principle of law we find in 5 Am.Juris., Section 3, page 447.

We desire to proceed further on the premise that an auction sale is not of itself a nuisance, but that the business is a legitimate subject of regulation to prevent abuses and frauds. Dornberg v. City of Spokane, 125 Wash. 72, 215 P. 518, 31 A.L.R. 299.

Plaintiff cites and relies upon the following cases: Nippert v. City of Richmond, 327 U.S. 416, 66 S.Ct. 586, 90 L. Ed. 760; Toomer v. Witsell, 334 U.S. 385, 68 S.Ct. 1156, 92 L.Ed. 1460; Sipe v. Murphy, 49 Ohio St. 536, 31 N.E. 884, 17 L.R.A. 184; Nickles v. Echelberger, Ohio App., 31 N.E.2d 474; Myers v. City of Defiance, 67 Ohio App. 159, 36 N.E.2d 162; Frecker v. City of Dayton, 153 Ohio St. 14, 90 N.E.2d 851.

In the case of Nippert v. Richmond, the Court concluded, 327 U.S. at page 434, 66 S.Ct. at page 595, as follows:

"The tax here in question inherently involves too many probabilities, and we think actualities, for exclusion of or discrimination against interstate commerce, in favor of local competing business, to be sustained in any application substantially similar to the present one. * * *"

The City of Richmond had adopted an ordinance which provided for an annual license tax in the sum of $50.00 on agents, solicitors and persons, firms or corporations engaged in the business of

soliciting and, in addition thereto, a tax of one half of one percentum of the gross earnings, receipts, fees or commissions for the preceding license year in excess of $1,000.

The ordinance further provided that an applicant for a license must produce to the Director of Public Safety evidence of the good character of the individual, the members of the firm, or the chief officers of the corporation, as the case may be, and it shall thereupon be the duty of the Director of Public Safety to make a reasonable investigation of the character of said individual, each of the members of the firm, or each of the chief officers of the corporation, as the case may be, and if he be satisfied that the individual, the members of the firm or the principal officers of the corporation, as the case may be, be of good moral character and a person or persons fit to engage in the proposed business, he shall issue the permit.

The above considerations, among a number of others, led the Court to the conclusion that the tax in question involved too many probabilities in favor of local competing business to be sustained in any application, and the quite apparent purpose of the ordinance to discriminate against solicitors and in favor of local merchants, led the Court to hold the ordinance unconstitutional.

In the case of Toomer v. Witsell, the Court held that two requirements of an act of the Legislature of the State of South Carolina relative to shrimp fishing rendered the act unconstitutional and in violation of the commerce clause of Article 1, Section 8 of the Constitution.

Section 3379 of the act required the payment of a license fee of $25 for each shrimp boat owned by a resident and a fee of $2,500.00 for each one owned by a non-resident. Section 3414 of the act required that owners of shrimp boats fishing in the maritime belt of South Carolina dock at a South Carolina port and unload, pack and stamp their catch before shipping or transporting it to another State, and the Court was of the opinion that these requirements were in violation of Article 1, Section 8 of the Constitution. We do not find such discrimination in favor of a local industry and against a foreign industry in the case before us.

In the case of Sipe v. Murphy, the Court concluded as follows 49 Ohio St. on page 545, 31 N.E. on page 886:

"Upon an examination of the ordinance under consideration, we are led to the conclusion that its passage was not a reasonable exercise of the power to legislate on the subject of auctions, as conferred by section 1692 of the Revised Statutes."

In this case there appears to be a palpable discrimination between goods manufactured and sold in Columbus and imports into Columbus from the outside. The quite evident purpose of the ordinance was to create a monopoly by protecting local tradesmen and merchants against outside competition.

The case of Nickles v. Echelberger involved an ordinance of the City of Ashland, Ohio, which required any peddler, transient, person or persons within the limits of the City to obtain a license and permit for such business from the Mayor. Mr. Rastetter was engaged as a driver for a bakery and he received his load in the morning and settled at night for the articles sold, and was paid a salary with commissions by the bakery that manufactured the bread. The case turned on the point that Rastetter's employer was a manufacturer and that, under the provisions of Section 3672 General Code of Ohio, the manufacturer's agent had a right to sell goods of his own manufacture in any way. This case has no application to the case before us.

In Myers v. City of Defiance, an ordinance of the City of Defiance required all persons engaged in the business of dry cleaning and pressing to secure a license, and further required that when a dry cleaning or pressing establishment was located outside the municipality, as a prerequisite to the issuance of a li-

cense, the owner should give a $1,000 cash bond conditioned that all property removed from the municipality would be accounted for. The Court concluded 67 Ohio App. on page 174, 36 N.E.2d on page 169, as follows:

"It is therefore apparent from the provisions of section 2 of the ordinance that the purpose of the ordinance is not to furnish financial protection to persons securing the services of licensees under the ordinance, but to place an additional burden on applicants for licenses who maintain their establishments outside the limits of the city."

The case of Frecker v. City of Dayton involved an ordinance of the City of Dayton which provided that no person, firm or corporation shall sell or offer to sell, in the parks, and on or from the streets, sidewalks and alleys of the city of Dayton, Ohio, any ice cream in any form, popsicles, ice sherberts or frozen desserts of any kind, any and all kinds of soft drinks, such as pop cola drinks or others, candies of any kind, hot dog or other sandwiches, and peanuts, popcorn, or other similar products.

The Court concluded 153 Ohio St. on page 17, 90 N.E.2d on page 852, as follows:

"* * * 'Does an Ohio community possess power to ban the transaction of business upon its streets and other public places?'

* * * * * *

"* * * Not only is discrimination apparent on the face of ordinance No. 16059, but the evidence in this case shows that there is a discrimination between dealers in comparable merchandise and that many other street peddlers, hawkers and hucksters are licensed to use the streets of the city of Dayton for the sale of their merchandise."

The Frecker case thus appears to have involved only the question of whether or not a community had the power to ban the transaction of certain businesses upon its streets and other public places to the exclusion of other modes and methods of business.

We turn to the case of Holsman v. Thomas, 112 Ohio St. 397, 147 N.E. 750, 39 A.L.R. 760. In this case a local police ordinance enacted by the council of the City of Cleveland, Ohio, was designed to regulate auctions of jewelry and it provided, among other things, that no jewelry should be sold at auction for a period greater than sixty days in one year, and that the auctioneer must have been a resident of the municipality for one year and must have had a regular stock of jewelry for six months of that year. The Court concluded that this ordinance was a valid and constitutional enactment and was not in conflict with Article XIV, Section 1 of the Constitution of the United States. On page 404 of 112 Ohio St., on page 752 of 147 N.E., we find the following:

"Under the decisions of the United States, and of this state, it is held that the inalienable rights given to the citizens of this state in article I of the Ohio Constitution, and the equal protection and benefit guaranteed them in that document as well as in the federal Constitution, do not render the citizens immune from the operation of the police power.

"If the ordinance is valid, it is so because it falls within the police power, and if within the police power the fact that plaintiff's trade is regulated thereby, and that incidental loss may result to him therefrom, does not impair the validity of the ordinance.

"Does the ordinance fall within the police power?

"Now, the police power relates not merely to the public health and to public physical safety, but also to public financial safety. Laws may be passed within the police power to protect the public from financial loss. * * * *"

The Court affirmed the judgments of the lower courts and held the ordinance valid.

In the case of Wilson v. City of Zanesville, 130 Ohio St. 286, 199 N.E. 187, the Court had before it an ordinance of the City designed to regulate the hours of work for barbers by way of licensing barbers and regulating the barber shops.

The Court concluded that regulations which are reasonable and have a definite relation to the public health, morals and safety, or to the general welfare, constitute a valid exercise of the police power.

In the case of Feldman v. City of Cincinnati, heretofore referred to, the Court referred to and commented on the case of Holsman v. Thomas, 112 Ohio St. 397, 147 N.E. 750, 39 A.L.R. 760, and Wilson v. City of Zanesville, 130 Ohio St. 286, 199 N.E. 187. We believe that this case fully and correctly sets forth the considerations that should guide us in the case before us.

It is our opinion that the Legislature of the State of Ohio, in the exercise of its police powers, and having in view the nature of the business sought to be regulated, had full authority to enact the statutes under Chapter 1318 of the Revised Code of Ohio and that this authority was not exercised in an unreasonable and arbitrary manner.

Certainly the license fee of $10 per day is not excessive and unreasonable considering the nature of the business sought to be regulated. The work involved in the consideration of an application for a license, the issuance of the license, and the supervision of the licensee required by the statutes, justified the sum of the license fee in question.

The requirement of the bond does not discriminate between a licensee and a taxpayer of a county in which the auction sale is proposed to be held, but rather, in our opinion, has a tendency to bring the licensee and the taxpayer on a parity. In the case before us, the taxpayer in Wood County, Ohio, who has filed a personal property tax return and has been assessed in the county in which the new merchandise is offered for sale by the taxpayer at his place of business, is exempt, and properly so, from filing an application for a license to conduct an auction sale but in lieu thereof is required to file an affidavit that such taxpayer or the consignor of such merchandise has filed a personal property tax return and has been assessed in the county in which the new merchandise auction sale is to be held. One purpose of the bond requirement is obviously to make the licensee amenable to taxation on the same basis as the local taxpayer. The only orderly method of establishing this status is to require the applicant to receive a license and to furnish a bond so that there may be some assurance and some guarantee that the personal property taxes and the State sales taxes required of the resident taxpayer who desires to conduct an auction shall also be met by the applicant for a license who is not an established taxpayer of the county in question. It is to be noted in passing that it is only the taxpayer in the county in which he proposes to hold an auction sale who is exempt from filing an application for a license under the provisions of the sections under Chapter 1318. All other persons desiring to conduct an auction sale of new merchandise, whether they reside in the other eighty-seven counties of the State of Ohio or whether they reside outside the State of Ohio, are treated alike. They must file application, be licensed and furnish a bond so as to bring themselves on a parity with the obligations of the local taxpayer so that their taxes may be returned and accounted for. Another apparent purpose of the bond requirement is to make the licensee amenable to any suits that may arise as the result of their activities in the auctioneering of goods, and to guarantee the satisfaction of all judgments, tax assessments or fines. The protection of the local citizens who buy merchandise at auction sales from fraud and misrepresentation appears to be one of the primary objectives of the bond requirement.

We are of the opinion that the requirements of the statutes in question are not

unreasonable and are not arbitrary, and that the police power of the State is properly invoked.

The motion to dismiss the complaint is sustained.