LOTTINGER, Judge.
This is an appeal from a decision in a summary proceeding in the Lower Court wherein petitioner was successful in obtaining the issuance of a mandatory injunction against the defendant. The petitioner is National Dairy Products Corporation, hereinafter called Sealtest, and the defendant is the Louisiana Milk Commission, hereinafter referred to as Commission, The Commission has taken this appeal.
This litigation results from an attempt by Sealtest, a processor or handler of dairy products, to force the Commission to establish dock prices on fluid milk products. A “dock price” is the wholesale price applicable to a transaction in which the retailer accepts delivery of the dairy product at the processing plant. At present, the Commission establishes only one wholesale price, and this price is applicable regardless of the point at which the retailer accepts delivery and regardless of whether in-store services are provided by the processor.
This suit for injunction followed a hearing before the Commission in which the Commission failed to establish a dock price as requested by petitioner. Petitioner charges that the Commission’s refusal to establish such prices was “unreasonable, arbitrary and capricious.”
The Orderly Milk Marketing Law (Act 193 of 1958 as amended by Act 340 of 1962, now found in La.R.S. 40:940.1 et seq.) provides a comprehensive plan of economic regulation for the Louisiana Dairy Industry. The 1958 Act specifically authorized dock prices (La.R.S. 40:940.3(j) prior to the 1962 amendment) but the 1962 amendments eliminated all references to dock prices. The only other legislative action relating specifically to dock prices occurred during the year of 1968 when the Louisiana Legislature refused to approve the Senate Concurrent Resolution No. 53 which directed the Louisiana Milk Commission to establish dock prices. Copies of the pages of the official journal for the proceedings of the Senate for the said session are a part of the record of this proceeding.
During the period 1958 through 1962, dock prices were made available by pro *598 cessors to Louisiana Retailers. From the spring of 1959 until the fall of 1960, Winn-Dixie, a chain retailer, purchased fluid milk products from Sealtest at dock prices. In spite of the fact that such dock prices were available for this large retailer, Winn-Dixie began construction, around the beginning of 1960, of its own dairy products processing plant in the New Orleans area. The discontinuance of the dock price arrangement between Sealtest and Winn-Dixie coincided with the opening of this dairy products processing plant by Winn-Dixie in the fall of 1960.
The Louisiana Milk Commission is directed by statute to “establish the minimum * * * prices at which (fluid milk products) are sold by handlers, distributors, and non-processing retailers to any person.” La.R.S. 40:940.19(4). During December of 1962, the Commission divided the State into three Commission Sales Areas as it was authorized to do by La:R.S. 40:940.19 (7). Later, the Commission divided the original Commission Sales Area No. 3 into three smaller Commission Sales Areas with the result that there are five Commission Sales Areas at the present time.
During March of 1963, the Commission established minimum wholesale and retail prices for fluid milk products in Sales Area No. 1 (the New Orleans Metropolitan Area). Subsequently, the Commission established the minimum wholesale and retail prices for fluid milk products in the four other areas.
During June of 1967, the Commission held a hearing at which consideration was given to a request by Sealtest that the Commission establish three additional sets of wholesale prices for all five Commission Sales Areas. This request included the fixing of dock prices. At this hearing there was testimony from both those who supported the Sealtest proposals and from those who opposed them, among which three processors, including one from Commission Sales Area No. 1 testified in opposition to the proposals.
At the request of Sealtest a new rule-making hearing was held during February of 1968, and consideration was given to a revised proposal by Sealtest that dock prices be fixed for Area No. 1 only.
As in the case of the first hearing, there were witnesses both for and against the revised Sealtest proposal. In order to avoid the necessity for having witnesses repeat during the second hearing, all that had been said about dock price fixing at the first hearing, representatives of Sealtest and the Commission staff agreed that the pertinent portions of the first hearing record would be incorporated by reference into the second hearing record. This revised proposal of Sealtest was also rejected by the Commission. An application for modification of Commission action was denied by the Commission and the suit for the mandatory injunction was filed shortly thereafter in the Trial Court.
The Trial Court reversed the decision of the Commission, the mandatory injunction was granted and the matter remanded to the Commission for the establishment of minimum dock prices for Area No. 1. The Commission has taken this appeal.
The Commission assigns seven errors on the part of the Lower Court, namely:
1. The Trial Court erred in permitting plaintiff to proceed by summary rather than ordinary process.
2. The Trial Court erred in failing to hold that the Commission lacked the authority to establish dock prices.
3. The Trial Court erred in holding that the Commission may not consider information outside of the record in its handling of rule-making matters.
4. The Trial Court erred in holding that the Commission’s decision against establishing dock prices is “clearly arbitrary, capricious and unreasonable.”
5. The Trial Court erred in holding that the record contains “no substantial *599 testimony in support of the finding of the Commission.”
6. The Trial Court erred in failing to hold that the application of the Clean Hands Doctrine to the facts of this case precludes injunctive relief.
7. The Trial Court erred in refusing to grant the Commission a new trial.
With regard to the second assignment of error, to the effect that the Commission lacks the authority to establish dock prices, it appears that there exists a clear legislative intent as to the correctness of this contention on the part of the Commission. As we have stated above, Act 193 of 1958 specifically authorized the establishment of dock prices. The 1962 amendment, however, eliminated all reference to dock prices. Furthermore, the Louisiana Legislature of 1968 refused to approve Senate Concurrent Resolution No. 53 which would have directed the Commission to set dock prices.
In State ex rel. Clark v. Hillebrandt, 244 La. 742, 154 So.2d 384 (1963), the Court ruled against an indigent litigant in his attempt to have witnesses subpoenaed without depositing with the Clerk of Court the sum of money required of non-indigent litigants. The Court based its decision on the omission from Article 5185 of the Code of Civil Procedure of the language previously found in R.S. 13:4525 relative to witnesses and forma pauperis proceedings. The reasoning applied by our Supreme Court in the Hillebrandt case was to the effect that the omission in the subsequent act evidenced a legislative intent to change these statutes. This reasoning is consistent with the general rule of statutory construction, which is stated in American Jurisprudence as follows:
“The omission of a word in an amendment of a statute will be assumed to have been intentional. Where the meaning of the prior law is intended to be continued, its terminology is also usually continued, so that an omission of words implies an intended change in the meaning of the statutes.” 50 Am.Jr. Statutes Section 276 (1944).
With regard to the contention on the part of Commission that the Lower Court erred in holding that the Commission may not consider information outside the record in its handling of rule-making matters, LSA-R.S. 49:956, pertaining to the rules of evidence, official notice, oaths and affirmation, subpoenas, depositions and discovery, before the Commission, provides in Section 3 thereof:
“LSA-R.S. 49:956: Rules of evidence; official notice; oaths and affirmations; subpoenas; depositions and discovery
“(3) Notice may be taken of judicially cognizable facts. In addition, notice may be taken of generally recognized technical or scientific facts within the agency’s specialized knowledge. Parties shall be notified either before or during the hearing, or by reference in preliminary reports or otherwise, of the material notice, including any staff memoranda or data, and they shall be afforded an opportunity to contest the material so noticed. The agency’s experience, technical competence, and specialized knowledge may be utilized in the evaluation of the evidence.” (Emphasis added)
LSA-R.S. 49:957 further provides:
“LSA-R.S. 49:957. Examination of evidence by agency * * * No sanction shall be imposed or order be issued except upon consideration of the whole record and as supported by and in accordance with the reliable, probative, and substantial evidence.’’ (Emphasis added).
Actions of administrative agencies fall into two categories: quasi-legislative (rule-making) and quasi-judicial (adjudicative).
The Commission concedes, that if its handling of the dock pricing question falls in the “adjudicative” category, the applicable minimal procedural requirements have not been met. On the other hand, the Commission contends that the dock pricing *600 matter is a “rule-making” matter and that the Commission has, in handling this matter, complied with the procedural requirements set forth by law.
Neither the federal nor the state constitutions present a problem for the Commission in the present controversy as the Courts have held that no hearing whatsoever is required where administrative agencies are dealing with rule-making matters, unless a hearing is required by Statute. Board of Barber Examiners v. Parker, 190 La. 214, 182 So. 485.
The Orderly Milk Marketing Law requires the Commission to “hold public hearings prior to establishing or changing any price * * *.” La.R.S. 40:940.19(6). The Legislature is silent on most of the procedural questions which would arise in connection with the holding of a public hearing by the Commission, and the Legislature, as found in La.R.S. 40:940.19(15) has delegated to the Commission the authority to prescribe the procedural requirements applicable to its activities when it said :
“Hearings which the commission is required to hold shall be held * * * in the manner prescribed by the commission * *
In Highland Farms Dairy v. Agnew, D. C., 16 F.Supp. 575, a three judge Federal Court was construing a statute that required a “public hearing” by the dairy industry regulatory agency of the State of Virginia in connection with establishing marketing areas and fixing minimum prices for milk. Although the agency’s actions were based on evidence not offered at the hearing, the Court said that the procedure followed by the agency did not violate due process; and the Court’s decision was based on the reasoning that the hearing required by the Statutes was of the same nature as that held by a legislative committee in considering proposed legislation. The Court specifically held that the agency was justified in taking into consideration not only the facts presented at the public hearing, but also those which came to it subsequently from interested persons, or were disclosed by its own investigation into the facts and literature bearing upon the subject.
This decision was affirmed by the United States Supreme Court, 300 U.S. 608, 57 S.Ct. 549, 81 L.Ed. 835 (1936). Although the Supreme Court did not discuss specifically the issue raised by the agency’s consideration of information outside the record, it did make the following pertinent comment :
“A District Court of three judges * * gave judgment for the defendants, with a comprehensive opinion to which little can be added.” Highland Farms Dairy v. Agnew, supra at 611, 57 S.Ct. at 551.
Under the provisions of Section 3 of R.S. 49:956, the agency (Commission) was authorized by the Louisiana Legislature to utilize its experience, technical competence, and specialized knowledge in evaluation of the evidence. Although it is contended by Sealtest that there was no evidence established at the hearing of February 1968 against the fixing of dock prices by the Commission, there was introduced into the record as evidence in said hearing the transcript of the record of the hearing held in June of 1967 at which there was such evidence. This formed a portion of the evidence which was to be considered by the Commission following the 1968 hearing, and the Commission, in accordance with the stipulation by attorneys, agreed to accept said evidence.
The evidence in the record, therefore, included substantial evidence both against and for the fixing of dock prices and by both witnesses residing in Area I and residing outside of Area I. Considering this evidence, it appears to us that the Commission was within the realm of its discretion when it refused to fix dock prices as there was a substantial amount of evidence in the record against the fixing of dock prices. We feel further that the *601 experience, technical competence, and special knowledge of the various members of the Commission was utilized in the evaluation of the evidence in reaching a decision in the matter.
Nor do we believe that the Commission was clearly arbitrary, capricious and unreasonable in refusing to fix dock prices as is now claimed by Sealtest. With regard to judicial review of the adjudication of the Commission, LSA-R.S. 49:964, in Section F and G, provides as follows:
“LSA-R.S. 49:964. Judicial review of adjudication

“F. The review shall be conducted by the court without a jury and shall be confined to the record. In cases of alleged irregularities in procedure before the agency, not shown in the record, proof thereon may be taken in the court. The court, upon request, shall hear oral argument and receive written briefs.”
“G. The court may affirm the decision of the agency or remand the case for further proceedings. The court may reverse or modify the decision if substantial rights of the appellant have been prejudiced because the administrative findings, inferences, conclusions, or decisions are:
(1) In violation of constitutional or statutory provisions:
In excess of the statutory authority of the agency;
Made upon unlawful procedure;
Affected by other error of law;
(5) Arbitrary or capricious or characterized by abuse of discretion or clearly unwarranted exercise of discretion; or
(6) Manifestly erroneous in view of the reliable, probative, and substantial evidence on the whole record. In the application of the rule, where the agency has the opportunity to judge of the credibility of vdtnesses by first-hand observation of demeanor on the witness stand and the reviewing court does not, due regard shall be given to the agency’s determination of credibility issued. Acts 1966, No. 382, § 14, eff. July 1, 1967.” (Emphasis added)
As we have stated before, there is substantial evidence in the record against the fixing of dock prices as is proposed by Sealtest, and we do not believe that the decision of the Commission in refusing to fix such prices was manifestly erroneous in view of the reliable, probative and substantial evidence contained in the records.
In view of the above, the errors assigned as No. 1, 6 and 7 are moot and they need no comment by the Court.
For the reasons hereinabove assigned, the decision of the Lower Court will be reversed and there will be judgment dismissing this matter at petitioner’s cost and further dismissing the mandatory injunction issued below, all at the cost of petitioner, Sealtest.
Judgment reversed.