**Phyllis RESER et al.**

v.

**Joseph A. CALIFANO, Jr., et al.**

**No. 77 4266 CV C.**

United States District Court,
W. D. Missouri, C. D.

March 15, 1979.

Nunc Pro Tunc March 28, 1979.

Richard Huber, Edwin H. Steinmann, Jr., Support Enforcement Unit, Div. of Family Services, Jefferson City, Mo., for plaintiffs.

Judith M. Strong, Asst. U. S. Atty., Kansas City, Mo., for defendants.

## OPINION AND ORDER

ELMO B. HUNTER, District Judge.

### I

#### *Introduction*

This is an action for declaratory and injunctive relief to require defendants to make available federal financial participation funds under Title IV–D of the Social Security Act, as amended, 42 U.S.C. § 651 *et seq.*, to reimburse plaintiffs for expenditures on electronic data processing equipment and other office equipment in the offices of the circuit clerks of the 43 judicial circuits of the State of Missouri. Title IV–D was enacted for the purpose of "enforcing the support obligations owed by absent parents to their children, locating absent parents, establishing paternity, and obtaining child support." 42 U.S.C. § 651. The program contemplates federal financial assistance to state agencies implementing the child support enforcement program in their respective states. 42 U.S.C. § 655.

Plaintiffs are the Director of the Missouri Division of Family Services, the agency charged with such implementation, and Jackson County, Missouri, a body corporate and political subdivision of the State of Missouri. It is plaintiffs' contention that Title IV–D mandates federal reimbursement of "necessary expenditures" incurred in the offices of the circuit clerks for the implementation of the child support enforcement program, including expenditures for office furniture and equipment and electronic data processing equipment. Defendants' position is that federal financial participation is not available for such expenditures and is precluded by the regulations implementing the IV–D legislation, 45 C.F.R. § 304.21(b).[1]

---

1. On July 31, 1978, the Secretary amended 45 C.F.R. § 304.21(b) to provide that federal financial participation is now available for such items as "office space, furniture, supplies, computers, etc., to the extent that these costs are necessary for the proper and efficient adminis-

Both parties move for summary judgment; defendants, in the alternative, also move to dismiss for failure to exhaust administrative remedies. As the parties have stipulated to all relevant facts and further stipulated that no issues of fact remain to be litigated, the case is in a posture for summary judgment. Fed.R.Civ.P. 56.

## II

### Stipulated Facts

1. On February 11, 1977, the Regional Representative of defendants' Office of Child Support Enforcement issued a policy statement regarding the availability of federal reimbursement to courts and employees of courts for performance of child support enforcement activities under Title IV–D. The statement explained that federal reimbursement was available to a court *only* for certain expenditures for service of process and court filing fees, 45 C.F.R. § 304.-21(b)(1), and for compensation of individuals employed by a court and performing the functions specified in 45 C.F.R. § 304.-20(b)(2)–(8). The statement went on to say that 45 C.F.R. § 304.21(b) precluded reimbursement for any other court or judicial costs.

2. In a letter of July 18, 1977, plaintiff Reser asked defendants' Regional Representative whether federal financial participation would be available for the purchase of desks and typewriters to be used in Title IV–D activities in the Office of the Circuit Clerk of Jackson County, Missouri.

3. The reply of defendants' Regional Representative, on July 21, 1977, was that federal financial participation was not available under the limitation of 45 C.F.R. § 304.21(b)(3): "No other court or judicial costs are subject to Federal financial participation."

4. In a letter of July 25, 1977, plaintiff Reser asked whether federal financial participation was available for the purchase of electronic data processing equipment by a county for use by court personnel in implementing the Title IV–D child support enforcement program. Plaintiff Reser submitted an opinion of the Jackson County Counselor that title to such equipment would be in the county and not in the court, which would use the equipment on a time-sharing basis. Defendants' representative advised that the issue was not yet resolved, but that clarification was being sought from the central office.

5. On August 8, 1977, defendants' Regional Representative asked defendant Louis B. Hayes, Deputy Director of the Office of Child Support Enforcement whether federal financial would be available for expansion of the electronic data processing system used by the Circuit Court of Jackson County, Missouri.

6. On August 8, 1977, Defendant Hayes advised defendants' Regional Representative that federal funds were not available for that purpose due to the limitation in 45 C.F.R. § 304.21(b). Hayes further advised that the ultimate ownership of any computer system used by a court would reside in the political entity funding the court's operations, and that therefore the state of title of the computer system used by the court in Jackson County was irrelevant to a determination of federal financial participation.

7. By letter of September 8, 1977, defendants' Regional Representative informed plaintiff Reser that federal funds were not available under Title IV–D for the electronic data processing system of the Circuit Court of Jackson County. The reason given was the limitation contained in 45 C.F.R. § 304.21(b).

8. The defendant Secretary estimates the federal funds to which each state is entitled each calendar quarter through the submission by each state agency of a "State Agency Expenditure Projection-Quarterly Projection by Program" and a quarterly

tration of the child support enforcement program." 43 Fed.Reg. 33,249, 33,250 (1978). This amendment renders moot plaintiffs' claim except as it concerns expenditures during the period from the inception of the Title IV–D program until the amendment of the regulation. All future references in this opinion are to the regulation published at 40 Fed.Reg. 27,157 (June 26, 1975) and set out at 45 C.F.R. § 304.21 (1977).

statement of expenditures made for past periods. Payments are made to each state based on this estimate.

9. As of August 7, 1978, none of the quarterly expenditure projections submitted by the State of Missouri have requested federal financial participation for costs of office equipment or electronic data processing equipment for the courts of Jackson County.

10. The State of New Jersey has claimed federal financial participation for expenses similar to those that were the subjects of plaintiffs' inquiries discussed above. New Jersey requested reimbursement for such expenses for the last two quarters of 1976 and for each quarter of 1977. Reimbursement was disallowed based on defendants' interpretation of the limitations in 45 C.F.R. § 304.21(b). New Jersey sought reconsideration of the disallowances pursuant to defendants' disallowance and reconsideration procedures in effect at the time of disallowance. As of August 7, 1978, no rulings on these requests had been made.

### III

### *Failure to Exhaust Administrative Remedies*

Defendants move to dismiss on the ground that plaintiffs have failed to exhaust their administrative remedies. The parties stipulate that plaintiffs have not requested federal funds for the expense items in question in the quarterly expenditure projections required by 45 C.F.R. § 301.15, have not had such a request disallowed, and have not requested reconsideration of the disallowance by utilizing the reconsideration procedures provided in 45 C.F.R. § 201.14 and 45 C.F.R. Part 16 (the Grant Appeals Process). Defendants thus argue that there has been neither an initial nor a final agency decision on federal financial participation for office equipment and electronic data processing equipment. Defendants contend that the Court has not been presented with a justiciable controversy and therefore has no jurisdiction and should dismiss. *See Myers v. Bethlehem*

*Ship-Building Corp.*, 303 U.S. 41, 58 S.Ct. 459, 82 L.Ed. 638 (1938).

Whether administrative remedies must be exhausted before judicial review is sought is a matter within the discretion of the courts. *NLRB v. Marine & Shipbuilding Workers Local 22*, 391 U.S. 418, 426 n.8, 88 S.Ct. 1717, 20 L.Ed.2d 706 (1968). It has been held repeatedly that the exhaustion of administrative remedies is not a prerequisite to judicial review if resort to the administrative remedy would amount to a futile act. *Porter County Chapter of the Izaak Walton League of America, Inc. v. Costle*, 571 F.2d 359 (7th Cir.), *cert. denied,* —— U.S. ——, 99 S.Ct. 115, 58 L.Ed.2d 130 (1978); *Seepe v. Department of the Navy*, 518 F.2d 760 (6th Cir. 1975); *Ogletree v. McNamara*, 449 F.2d 93 (6th Cir. 1971). *See City Bank Farmers Trust Co. v. Schnader*, 291 U.S. 24, 54 S.Ct. 259, 78 L.Ed. 628 (1934). After a careful consideration of the stipulated facts, this Court is convinced that resort by plaintiffs to further administrative procedures would be futile and would serve only to delay the ultimate determination of the issue presented by this suit. Defendants' position regarding federal funding for administrative costs incurred by courts implementing the Title IV-D program has been made clear by the regulation promulgated by the defendant Secretary, 45 C.F.R. § 304.21(b), and by defendants' memoranda interpreting that regulation in response to plaintiff Reser's inquiries. Plaintiffs have been informed by defendants, after defendants secured a ruling from their central office, that federal financial participation is not available for the items in question. To require plaintiffs to follow the administrative request and reconsideration process at this stage, when the controversy concerns only a legal issue, would not serve the purposes underlying the doctrine requiring exhaustion of administrative remedies or the purposes of Title IV-D. The position of the disallowance and request for reconsideration of the State of New Jersey for similar equipment, stipulated by the parties, is further indication that defendants' position regarding these items is clear,

and that resort to administrative processes by plaintiffs would be unavailing. Accordingly, the Court finds that it has been presented with a justiciable question and that defendants' motion to dismiss for failure to exhaust administrative remedies should be denied.

## IV

### Federal Financial Participation

Section 455 of the Social Security Act, as amended, 42 U.S.C. § 655, provides that the Secretary of the Department of Health, Education and Welfare shall pay to each state 75 percent of the operating costs of its approved Title IV–D child support enforcement plan. Pursuant to his authority under 42 U.S.C. § 1302,[2] the the Secretary has promulgated regulations implementing Title ·IV–D. The regulation which identifies the costs incurred by state courts which are eligible for federal financial participation is set out at 45 C.F.R. § 304.21:[3]

(a) Federal financial participation at the 75 percent rate is available in the costs of cooperative agreements with appropriate courts . . . . When performed pursuant to written agreement, cost of the following activities are subject to reimbursement:

(1) Subject to the conditions of § 304.-20(a) of this chapter, the activities, including administration of such activities, specified in § 304.20(b)(2)–(8) of this chapter;

.     .     .     .     .

(b) Federal financial participation is not available for the ordinary administrative costs of the judiciary system. Under this provision:

(1) Service of process and court filing fees are reimbursable only if the law enforcement agency would normally be required to pay the cost of such fees;

(2) Compensation of individuals (other than judges) employed by a court is reim-

bursable at the 75 percent rate if such individual performs any of the activities described in paragraph (b)(2)–(8) of § 304.20;

(3) No other court or judicial costs are subject to Federal financial participation.

Thus the Secretary has limited reimbursable costs incurred by a court under a Title IV–D agreement to service of process, filing fees, and salaries of individuals performing Title IV–D functions. Plaintiffs contend that this funding limitation is unreasonable and contrary to the purposes of the Act because it precludes federal participation in administrative costs which must necessarily be incurred by courts in order to implement a Title IV–D enforcement plan.

■ A reviewing court should give deference to the administrative agency's interpretation of a statutory scheme. The burden rests on the challenger to show that the regulation in question is inconsistent with the purpose of the enabling legislation. *Florida v. Mathews*, 526 F.2d 319 (5th Cir. 1976). The appropriate standard of review was stated by the Supreme Court in *Mourning v. Family Publications Service, Inc.*, 411 U.S. 356, 93 S.Ct. 1652, 36 L.Ed.2d 318 (1973): the validity of a regulation will be sustained so long as it is "reasonably related to the purposes of the enabling legislation." This standard applies to regulations promulgated under 42 U.S.C. § 1302. *Johnson's Professional Nursing Home v. Weinberger*, 490 F.2d 841 (5th Cir. 1974).

■ The administrative costs at issue are expenditures for office equipment (desks and typewriters) to be used for Title IV–D purposes by court employees receiving compensation for performing Title IV–D functions and electronic data processing equipment to be used by court employees in implementing the Title IV–D program. Plaintiffs argue that the limitation on federal funding in 45 C.F.R. § 304.21(b) is

2. 42 U.S.C. § 1302 provides: "The Secretary . . . shall make and publish such rules and regulations, not inconsistent with this chapter, as may be necessary to the efficient administra-

tion of the functions with which [he] is charged under this chapter."

3. This regulation was amended on July 31, 1978. *See* note 1 *infra*.

contrary to the purpose of Title IV–D because it provides that federal matching funds needed by courts to implement cooperative agreements be withheld. Plaintiffs state that the regulation is unreasonable because it allows federal funding for the compensation of court administrative personnel, but denies funding for the office equipment and computer services necessary to enable those court employees to implement the child support enforcement program. It is plaintiffs' position that the Title IV–D statutory scheme contemplates making federal matching funds available for the administrative costs to the states of implementing the program. To exclude the administrative costs at issue here, say plaintiffs, violates the congressional intent and purposes underlying the statute.

The legislative history indicates that cooperative arrangements with appropriate courts were to be eligible for federal matching funds. "These financial arrangements for costs of . . . courts directly related to the child support program will be subject to 75 percent Federal matching . . . ." S.Rep.No. 93–1356, 93d Cong., 2d Sess., *reprinted in* [1974] U.S.Code Cong. & Admin.News, pp. 8133, 8153.

In support of the limitation on funding available to courts, defendants state that the regulation was intended to avoid federal funding of the state judicial system in order to maintain a clear separation of powers and to avoid potential conflicts. Defendants state that potentially questionable situations could arise because federal matching funds would flow to the courts through the state agency, which would appear as a litigant in cases for which funds were provided. Defendants also state that they wanted to assure that Title IV–D funds were used only for Title IV–D purposes and were concerned that the state judicial systems lacked the expertise to apportion administrative costs between Title IV–D activities and the ordinary operating expenses of the state judiciary. Defendants state that these concerns led to the

promulgation of 45 C.F.R. § 304.21(b), which limits federal financial participation to service of process, filing fees, and compensation of individuals performing Title IV–D functions. Defendants contend that reimbursement of only these "easily identifiable" costs avoid the potential problems described above.

This Court must agree with plaintiffs' argument that the withholding of federal matching funds for administrative costs necessarily incurred by courts implementing a child support enforcement program is in conflict with the purposes of Title IV–D, as enumerated in 42 U.S.C. § 651.

> Both the standard of "reasonably related" and the statutory prohibition against regulations "inconsistent with this chapter," 42 U.S.C. § 1302, recognized that regulations must advance, rather than impede the legislative goals.

*National Welfare Rights Organization v. Mathews*, 174 U.S.App.D.C. 410, 419, 533 F.2d 637, 646 (1976). It is, of course, part of the legislative intent that Title IV–D monies be expended for Title IV–D activities. However, defendants' subjective concern that state court systems may be unable to apportion administrative costs between Title IV–D purposes and other purposes does not cause the complete exclusion of court administrative costs (other than employee compensation) from Title IV–D funding to be "reasonably related to the purposes of the enabling legislation." Such a concern would justify a strict approach to auditing state requests, but cannot justify a blanket prohibition on funding the type of administrative costs Title IV–D was enacted to provide. Defendants' concern that the federal government not become involved in financing the operations of the state judicial system through the state support enforcement agency may be a legitimate consideration, but it cannot operate to validate an agency regulation which is in conflict with statutory purpose.[4] The statute requires that each state plan provide for coop-

---

4. Defendants do not explain why this concern arose concerning federal funds for office equip-

ment but not concerning matching funds for the salaries of court employees.

erative arrangements with appropriate courts to assist the agency administering the plan "in order to assure optimum results," 42 U.S.C. § 654(7), and further requires the Secretary to provide 75 percent federal matching funds for the operation of such a plan, 42 U.S.C. § 655(a). · Defendants' regulation prohibits the funding of court administrative expenses that are directly attributable to the operation of a support enforcement program. It cannot be found to advance the legislative purpose, as it forbids the type of funding that the enabling statute mandates.

## V

### Conclusion

For the reasons above stated, this Court holds and declares that the regulation of the Department of Health, Education and Welfare, published in 40 Fed.Reg. 27,157 (1975) and set out at 45 C.F.R. § 304.21(b) (1977), as interpreted and applied by defendants in this case, is not reasonably related to the purposes of Title IV–D. Such regulation is not within the regulatory authority of the Secretary of Health, Education and Welfare under 42 U.S.C. § 1302 and is therefore invalid, as interpreted and applied.

The parties are directed to submit a proposed judgment consistent with this Opinion and Order, within 45 days of the date thereof.

Jurisdiction in this case is retained.

IT IS SO ORDERED.