WOMEN'S HEALTH SERVICES, INC., et al., Plaintiffs,

v.

Edward MAHER et al., Defendants,

v.

Patricia HARRIS et al., Third-Party Defendants.

Civ. No. H–79–405.

United States District Court, D. Connecticut.

May 6, 1981.

Martha Stone, Conn. Civil Liberties Union, Hartford, Conn., Catherine G. Roraback, Canaan, Conn., for plaintiffs.

Michael A. Arcari, and Paige Everin, Asst. Attys. Gen., Hartford, Conn., Donna Fatsi, Asst. U. S. Atty., New Haven, Conn., Brian N. Smiley, Paul Blankenstein, John B. Maclay, Civil Division, Dept. of Justice, Washington, D. C., for defendants.

### RULING ON DEFENDANTS' AND THIRD-PARTY DEFENDANTS' MOTIONS TO DISMISS

BLUMENFELD, District Judge.

On January 7, 1980, this court ordered the Connecticut Department of Social Services to extend Medicaid benefits to eligible women requiring medically necessary abortions. *Women's Health Services v. Maher*, 482 F.Supp. 725, 735–36 (D.Conn.), *vacated and remanded*, 636 F.2d 23 (2d Cir. 1980). The court held that a Connecticut regulation ("section 275") allowing Medicaid reimbursement for abortion services only when "on the basis of his professional judgment, the attending physician has certified in writing that the abortion is necessary be-cause the life of the mother would be endangered if the fetus were carried to term," 3 *Medical Assistance Program Manual*, ch. III § 275 (Sept. 1, 1977) [hereinafter section 275], violated the equal protection clause of the fourteenth amendment. *Women's Health Services*, 482 F.Supp. at 730–35. The court did not rule on a third-party complaint by the state defendants against the United States Department of Health, Education and Welfare seeking reimbursement for any expenditures ordered by the court.

On June 30, 1980, the United States Supreme Court sustained the "Hyde Amendment," Pub.L. No. 96–123, § 109, 93 Stat. 926, which limited federal funding for abortions to cases in which "the life of the mother would be endangered if the fetus were carried to term," against constitutional attack. *Harris v. McRae*, 448 U.S. 297, 325 n.27, 100 S.Ct. 2671, 2692, 65 L.Ed.2d 784 (1980). The Second Circuit accordingly vacated this court's order with instructions to consider the effect of *Harris v. McRae* and rule on issues arising out of the third-party complaint. *Women's Health Services, Inc. v. Maher*, 636 F.2d at 26 (2d Cir. 1980). This court thereafter denied the plaintiffs' petition for a temporary restraining order against enforcement of section 275 on December 16, 1980, because, in light of the Supreme Court's decision in *Harris v. McRae*, the plaintiffs were found no longer to raise a serious issue going to the merits which presented a fair ground for litigation. *Women's Health Services, Inc. v. Maher*, Ruling on Petition for Temporary Restraining Order, Civil No. H–79–405, at 5–12 (D.Conn. Dec. 16, 1980). The case is now before the court on the state and third-party defendants' motions to dismiss for failure to state a cause of action.

### I. THE STATE'S MOTION TO DISMISS

The original complaint claimed that section 275 violated the equal protection and due process clauses of the fourteenth amendment. Whether the complaint states a claim upon which relief could be granted now depends on application of the holding and reasoning of *Harris v. McRae*.

In *McRae*, the Supreme Court rejected substantive due process and equal protection challenges to a congressional ban on the expenditure of federal funds for abortions "except where the life of the mother would be endangered if the fetus were carried to term." *Harris v. McRae*, 448 U.S. 297, 325 n.27, 100 S.Ct. at 2692 (1980). The restriction did not impinge on a pregnant woman's right to decide whether to terminate her pregnancy because "the Hyde Amendment leaves an indigent woman with at least the same range of choice in deciding whether to obtain a medically necessary abortion as she would have had if Congress had chosen to subsidize no health care costs at all." *Id.* at 317, 100 S.Ct. at 2688. If the unavailability of Medicaid funds to pay for abortions discouraged a woman from exercising her right to choose abortion, that disincentive was constitutionally irrelevant. *See id.* In addition, the Court stated that there is no independent due process right to funding: "Although the liberty protected by the Due Process Clause affords protection against unwarranted government interference with freedom of choice in the context of certain personal decisions, it does not confer an entitlement to such funds as may be necessary to realize all the advantages of that freedom." *Id.* at 317, 100 S.Ct. 2688.

The Court also rejected an equal protection challenge, applying the most minimal level of scrutiny—whether " 'the classification rests on grounds wholly irrelevant to the achievement of [any legitimate governmental] objective.'" *Id.* at 322, 100 S.Ct. 2691 (quoting *McGowan v. Maryland*, 366 U.S. 420, 425, 81 S.Ct. 1101, 1104, 6 L.Ed.2d 393 (1961) (bracketed insert added by Supreme Court)). The Court denied that the Hyde Amendment's distinction between abortions not necessary to save the life of the mother and other medical services was based on a fundamental right or discriminated against a suspect class. *Id.* Applying the rational basis test, the Court held that the Hyde Amendment is valid because "it bears a direct relationship to the legitimate congressional interest in protecting potential life." *Id.* at 325, 100 S.Ct. at 2692.

The plaintiffs argue that *Harris v. McRae* should be distinguished from the present case because *McRae* upheld action by Congress while the plaintiffs here challenge action by a state commissioner. They invoke the notion of "structural justice" advanced by Professor Tribe, *see generally*, L. Tribe, *American Constitutional Law* §§ 17-1 to 17-3 (1978), to support their view. The theory of structural justice is offered, in part, to explain the Supreme Court's consideration, in the development of substantive doctrines, of the genesis of a decision in a particular governmental structure. When considering the validity of actions by administrative agencies, for example, the Court will consider whether the agency had been properly delegated the power to act and whether the action was based on factors within the agency's presumed competence to evaluate. *See id.* § 17-2 at 1141-43. I will now consider, therefore, the various constitutional theories pressed by the plaintiffs in light of both *McRae* and the possible significance of administrative as opposed to legislative action.

### A. Equal Protection

The equal protection issue must be controlled by the *McRae* decision unless the promulgation of section 275 by the Commissioner rather than by the state legislature requires application of a level of scrutiny higher than the rational basis test imposed by the Supreme Court. The plaintiffs argue that the regulation may not be sustained unless the record establishes that the state in fact promulgated the regulation in order to protect a legitimate interest such as the potential life of the unborn. Even if an after-the-fact justification by counsel was sufficient in the case of a legislative action, they argue, it should not be sufficient in the case of an administration action. This is especially so when the administrator has not been expressly delegated authority to evaluate and act upon the interests alleged to support his regulation.

The principal support for the plaintiffs' position is *Hampton v. Mow Sun Wong*, 426 U.S. 88, 96 S.Ct. 1895, 48 L.Ed.2d 495 (1976).

*Mow Sun Wong* was a challenge to a Civil Service Commission regulation that excluded non-citizens from civil service employment. *Id.* at 90, 96 S.Ct. at 1899. The challenge was mounted under the fifth amendment's due process clause which imposes some equal protection requirement on the federal government. *Id.* at 100, 96 S.Ct. at 1903. The Court assumed, for purposes of its decision, that either Congress or the President could constitutionally adopt such a regulation. *Id.* at 103–05, 116, 96 S.Ct. at 1905–06, 1911. The Court stated, however, that

> When the Federal Government asserts an overriding national interest as justification for a discriminatory rule which would violate the Equal Protection Clause if adopted by a State, due process requires that there be a legitimate basis for presuming that the rule was actually intended to serve that interest. If the agency which promulgates the rule has direct responsibility for fostering or protecting that interest, it may reasonably be presumed that the asserted interest was the actual predicate for the rule.

*Id.* at 103, 96 S.Ct. at 1905. The Court then found that the interests asserted in support of the regulation were not, in fact, interests that the Commission could rely upon because they did not advance the concerns of the Commission:

> It is the business of the Civil Service Commission to adopt and enforce regulations which will best promote the efficiency of the federal civil service. That agency has no responsibility for foreign affairs, for treaty negotiations, for establishing immigration quotas or conditions of entry, or for naturalization policies. Indeed, it is not even within the responsibility of the Commission to be concerned with the economic consequences of permitting or prohibiting the participation

by aliens in employment opportunities in different parts of the national market. *Id.* at 114, 96 S.Ct. at 1910. The Court held that the regulation was not rationally related to any valid interest of the Civil Service Commission. *Id.* at 115–16, 96 S.Ct. at 1910–1911.

▮▮▮ The plaintiffs argue that like the Civil Service Commission in *Mow Sun Wong*, the defendant Commissioner is relying on state interests to justify his regulation that he should not be presumed to have considered because they are not within his delegated authority to advance. Commissioner Maher's job, say the plaintiffs, was to administer the Medicaid program, not to make moral judgments for the State of Connecticut concerning the potential lives of the unborn.

The plaintiffs' argument, however attractive, ignores an essential element of the *Mow Sun Wong* Court's reasoning. The Court assumed, in the portion of the opinion quoted above, that the regulation at issue would violate the equal protection clause if adopted by a state. *See id.* at 103, 96 S.Ct. at 1905. On the other hand, the Supreme Court has already decided, following its decision in *Harris v. McRae*, that the regulation at issue here does not violate the equal protection clause when adopted by a state legislature. *Williams v. Zbaraz*, 448 U.S. 358, 369, 100 S.Ct. 2694, 2701, 65 L.Ed.2d 831 (1980). The *Williams* holding precludes subjecting the Connecticut regulation to the higher scrutiny applied in *Mow Sun Wong*.

The Civil Service Commission regulation in *Mow Sun Wong* would have violated the equal protection clause if adopted by a state because of the increased scrutiny given to state statutes classifying on the basis of alienage. *Mow Sun Wong*, 426 U.S. at 95, 96 S.Ct. at 1901.[1] It was because of the special status of aliens as a class that the Court carefully delineated the power actu-

---

1. Although "[t]he decisions of [the Supreme] Court regarding the permissibility of statutory classifications involving aliens have not formed an unwavering line over the years," *Ambach v. Norwick*, 441 U.S. 68, 72, 99 S.Ct. 1589, 1592, 60 L.Ed.2d 49 (1979), and the Court has examined some such classifications only for a rational basis, *e. g., id.* at 74–75, 99 S.Ct. at 1593–

1594 ("governmental function" exception to stricter scrutiny); *Mathews v. Diaz*, 426 U.S. 67, 81–84, 96 S.Ct. 1882, 1892–1893, 48 L.Ed.2d 478 (1976) (congressional allocation of Medicaid benefits), cases on which the *Mow Sun Wong* Court relied clearly required close scrutiny of state restrictions on aliens' employment. *E. g., Sugarman v. Dougall*, 413 U.S. 634, 642,

ally delegated to the Civil Service Commission to determine whether the interests that justified the regulation were clearly within the purview of the Commission's authority. *See id.* at 114–15, 96 S.Ct. at 1910. This inquiry reflected judicial solicitude for the rights of aliens, not a general rule requiring a higher standard of review for administrative as opposed to legislative action. Nothing in *Mow Sun Wong* suggests that if Congress had expressly delegated full power over aliens to the agency, the Court would not have applied the same standard of review as if Congress itself had enacted the regulation. Furthermore, the opinion does not suggest that the Court would be similarly concerned with the actual basis for an agency's decision if no suspect class or fundamental interest were affected. If the law were otherwise, all administrative actions would be subject to an elevated standard of review.

The Supreme Court has decided, however, that unlike the alienage classification in *Mow Sun Wong*, a restriction on Medicaid payments for abortions adopted by a state legislature is not deserving of any especial scrutiny under the equal protection clause. *Williams v. Zbaraz*, 448 U.S. at 369, 100 S.Ct. at 2701. Section 275, in view of *Harris v. McRae*, does not affect a suspect class and therefore is entitled to no more searching review than that applied to any other social or economic regulation. In such cases, a court may demand no more than a rational basis advanced at trial. The Supreme Court recently considered this point:

> Where, as here, there are plausible reasons for Congress' action, our inquiry is at an end. It is, of course, "constitutionally irrelevant whether this reasoning in fact underlay the legislative decision," *Flemming v. Nestor*, 363 U.S. [603] at 612 [80 S.Ct. 1367, 4 L.Ed.2d 1435], because this Court has never insisted that a legislative body articulate its reasons for enacting a statute.

93 S.Ct. 2842, 2847, 37 L.Ed.2d 853 (1973), *cited with approval in Mow Sun Wong*, 426 U.S. at 95, 96 S.Ct. at 1901 ("aliens as a class 'are a prime example of a "discrete and insular" minority ...' and ... classifications based on alienage are 'subject to close judicial scruti-

*United States Railroad Retirement Board v. Fritz*, — U.S. —, —, 101 S.Ct. 453, 459, 66 L.Ed.2d 368 (1980). The level of review is no different for a state administrative regulation. *See, e. g., Dandridge v. Williams*, 397 U.S. 471, 485, 90 S.Ct. 1153, 1161, 25 L.Ed.2d 491 (1970), *cited with approval in United States Railroad Retirement Board v. Fritz*, — U.S. —, — n.10, 101 S.Ct. 453, 460, 66 L.Ed.2d 368 (1980). Assuming that as a matter of Connecticut law Commissioner Maher was acting within his authority, *see infra* at 270, there is no basis on which this court may demand evidence of his actual reasons for adopting section 275 or scrutinize his statutory grant of authority for assurance that he was competent to consider the state interest in potential human life. The court's inquiry must stop with the determination that the regulation he promulgated is rationally related to a legitimate state interest. The Supreme Court's opinion in *Harris v. McRae* established the rational basis for the regulation challenged here as a matter of law.

The complaint, therefore, does not state a claim under the equal protection clause.

### B. *Due Process*

The plaintiffs argue that even if section 275 does not violate the equal protection requirement, its promulgation by a commissioner rather than by the Connecticut legislature violates their rights to due process. They rely on cases concerning a legislature's delegation of powers to administrative agencies and on the theory of "structural justice" to argue that a state's decision not to fund certain abortions may not be made singlehandedly by a commissioner such as the defendant Maher.[2]

#### 1. *Delegation of Power*

The Commissioner of Income Maintenance had broad authority to administer the

ny.'" (quoting *Graham v. Richardson*, 403 U.S. 365, at 372, 91 S.Ct. 1848, at 1852, 29 L.Ed.2d 534).

2. The plaintiffs, apparently, have not argued that the procedure followed by Commissioner Maher when he adopted section 275 did not

Medicaid program. Conn.Gen.Stat.Ann. §§ 17–1b(b), 17–134a, 17–134d (1975 & 1980 Cum.Supp.). The plaintiffs do not challenge Maher's authority under these statutes to promulgate section 275. Rather, they argue that it is unconstitutional for a state legislature to allow an agency to make important decisions affecting social policy without any guidelines to limit agency discretion. The plaintiffs' briefs have cited opinions concerning the permissibility of legislative delegation under the separation of powers doctrine, e. g., *Panama Refining Co. v. Ryan*, 293 U.S. 388, 421, 55 S.Ct. 241, 248, 79 L.Ed. 446 (1935), and the narrow construction of statutes to avoid such constitutional problems, e. g., *Kent v. Dulles*, 357 U.S. 116, 129, 78 S.Ct. 1113, 1119, 2 L.Ed.2d 1204 (1958). The Supreme Court, however, has never purported to incorporate the separation of powers doctrine expounded by these cases into the due process clause of the fourteenth amendment.

In *Highland Farms Dairy, Inc. v. Agnew*, 300 U.S. 608, 57 S.Ct. 549, 81 L.Ed. 835 (1937), the Supreme Court rejected the argument that delegation by a state legislature to an agency of the power to regulate prices might be unlawful under the federal constitution. *Id.* at 612, 57 S.Ct. at 551. Justice Cardozo wrote for the Court:

> The Constitution of the United States in the circumstances here exhibited has no voice upon the subject. The statute challenged as invalid is one adopted by a state. This removes objections that might be worthy of consideration if we were dealing with an act of Congress.

> *How power shall be distributed by a state among its governmental organs is commonly, if not always, a question for the state itself.* Nothing in the distribution here attempted supplies the basis for an exception. . . . Cases such as *Panama Refining Co. v. Ryan*, 293 U.S. 388 [55 S.Ct. 241, 79 L.Ed.2d 446], and *Schechter Poultry Corp. v. United States*, 295 U.S. 495 [55 S.Ct. 837, 79 L.Ed. 1570], cited by appellants, are quite beside the point. What was in controversy there was the distribution of power between President and Congress, or between Congress and administrative officers or commissions, a controversy affecting the structure of the national government as established by the provisions of the national constitution.

*Id.* (emphasis added). *Highland Farms Dairy* has been followed consistently. *E. g., Lombardi v. Tauro*, 470 F.2d 798, 801 (1st Cir. 1972), *cert. denied*, 412 U.S. 919, 93 S.Ct. 2734, 37 L.Ed.2d 145 (1973); *Parcell v. State of Kansas*, 468 F.Supp. 1274, 1277 (D.Kan.1979); *Rite Aid Corp. v. Board of Pharmacy*, 421 F.Supp. 1161, 1178 (D.N.J. 1976) (three-judge court), *appeal dism'd*, 430 U.S. 951, 97 S.Ct. 1594, 51 L.Ed.2d 801 (1977).

This court must adhere to the *Highland Farms Dairy* principle that the broad scope or vague boundaries of a state legislature's definition of an administrative agency's powers are not of federal constitutional concern.[3] The plaintiffs' argument that the statute defining Commissioner Maher's power is an unconstitutionally vague or overbroad delegation of power insofar as it supports promulgation of section 275 does

meet the requirements of procedural due process. Such an argument would fail if made, however, because the Constitution does not require a hearing prior to rule-making. *See Association of National Advertisers, Inc. v. FTC*, 627 F.2d 1151, 1165–66 (D.C.Cir.1979), *cert. denied*, 447 U.S. 921, 100 S.Ct. 3011, 65 L.Ed.2d 1113 (1980). Even if there are possible exceptions to this rule, *see Vermont Yankee Nuclear Power Corp. v. Natural Resources Defense Council, Inc.*, 435 U.S. 519, 524, 542 & n.16, 98 S.Ct. 1197, 1202, 1211, 55 L.Ed.2d 460 (1978), they cannot be relevant in the case of a regulation of broad applicability that the Supreme

Court has determined does not affect any constitutional right.

Neither have the plaintiffs asserted any state law claims in this action. Whether Commissioner Maher was obligated, under state law, to follow further procedures before promulgating section 275, *see, e. g., City of Hartford v. Powers*, 42 Conn.L.J. No. 32 at 2–4, —— Conn. ——, (Feb. 3, 1981), is not in issue.

3. This court has not considered whether delegation by the Connecticut legislature to Commissioner Maher of the power to promulgate section 275 violates the Connecticut Constitution under the separation of powers doctrine.

not state a claim under the due process clause of the fourteenth amendment.[4]

## 2. *"Structural" Due Process*

The plaintiffs argue that due process requires that a state's decision to fund indigent women's abortions only when their lives would be jeopardized by normal childbirth be made by a legislature or by an agency specifically delegated certain functions. The most persuasive support for this position is again the Supreme Court's decision in *Hampton v. Mow Sun Wong*, 426 U.S. 88, 96 S.Ct. 1895, 48 L.Ed.2d 495 (1976).[5]

Invalidating a Civil Service Commission regulation that denied federal employment to non-citizens, the Court stated:

---

See, e. g., State v. Stoddard, 126 Conn. 623, 626–28, 633, 13 A.2d 586, 588, 590 (1940).

**4.** The Supreme Court's decision in *Hampton v. Mow Sun Wong*, 426 U.S. 88, 96 S.Ct. 1895, 48 L.Ed.2d 495 (1976), invalidating a Civil Service Commission regulation imposing a citizenship requirement as a condition of federal employment because it was not justified by any interest properly within the concern of the Commission, *id.* at 116, 96 S.Ct. at 1911, could arguably be read broadly to incorporate delegation principles into due process analysis. *See id.* at 122, 96 S.Ct. at 1914 (Rehnquist, J., dissenting). The argument from *Mow Sun Wong* might be that the statute authorizing the Commission to issue regulations concerning federal employment would not be construed as authority to make decisions affecting noncitizens' rights when Congress had not otherwise delegated the Commission authority to take actions concerning noncitizens. The governing principle would be that it is constitutionally questionable to allow an agency to substantially limit important rights in the course of administering its programs in view of concerns unrelated to the constitutional issues. An agency's statutory authority would be construed narrowly as not encompassing the power to limit the rights of a group such as aliens unless there is a basis for presuming that the constitutional issues at stake will have been considered by the agency in the course of performing its duties. This presumption would be based on the agency's statutory duties to consider the problems of non-citizens. *See id.* at 116, 96 S.Ct. at 1911 (comparing Civil Service Commission with the Immigration and Naturalization Service). Authority to limit constitutional rights granted only as an incident to the power to administer a government program and without any guidelines for its exercise would be considered overbroad and violative of the due process guarantee.

The *Mow Sun Wong* Court, however, did not discuss the problem as one of delegation of powers. The case was essentially an equal protection challenge brought under the fifth amendment's due process clause, *see id.* at 100, 96 S.Ct. at 1903, and most readily explained in traditional due process and equal protection terms. *Accord, The Supreme Court: 1975 Term*, 90 Harv.L.Rev. 1, 108, 113–14. Any anti-delegation principle implicit in *Mow Sun Wong* is coincidental to the Court's analysis of the fundamental rights at stake in that case. *See infra* at 274. Indeed, Justice Rehnquist's suggestion that the decision was based on the delegation of powers doctrine, *Mow Sun Wong*, 426 U.S. at 122–24, 96 S.Ct. at 1914–15, followed his rejection of the majority's due process analysis, *see id.* at 119–21, 96 S.Ct. at 1912–1913 (dissenting opinion). Justice Rehnquist himself stated that "Nothing in . . . the . . . cases in which delegations to administrative agencies have been struck down suggested any reliance on the Due Process Clause of the Fifth Amendment . . . ." *Id.* at 122, 96 S.Ct., at 1914 (dissenting opinion). For this court to read an anti-delegation principle into the due process clause of the fourteenth amendment would receive little support from the majority opinion in *Mow Sun Wong* and would be inconsistent with the Court's clear rejection of a similar argument in *Highland Farms Dairy*. As Justice Rehnquist himself recently stated when considering the authority of a dissenting opinion's interpretation, "The comments in the dissenting opinion . . . are just that: comments in a dissenting opinion." *United States Railroad Retirement Board v. Fritz*, —— U.S. ——, —— n.10, 101 S.Ct. 453, 460, 66 L.Ed.2d 368 (1980).

**5.** The plaintiffs also rely on Professor Tribe's theory of structural due process advanced in a law review article. *See generally* Tribe, *Structural Due Process*, 10 Harv.C.R.C.L.L.Rev. 269 (1975). Reasoning from the example of a school board's rule that teenaged mothers be excluded from school, promulgated pursuant to the board's authority to exclude pupils for whom school is not suitable, Professor Tribe argues that the board should be required to justify the rule in each case in which it is applied. At least the board should be required to articulate the purposes of the rule and its relationship to suitability in each case. Professor Tribe does not argue that such individualized decisionmaking is required on account of any constitutional right to education, non-discrimination on the basis of gender, or procedural due process in the application of a rule before its execution. Rather, a court should require such decisionmaking as part of the judicial role "of giving structure to the evolution,

By broadly denying this class substantial opportunities for employment, the Civil Service Commission rule deprives its members of an aspect of liberty. Since these residents were admitted as a result of decisions made by the Congress and the President, implemented by the Immigration and Naturalization Service acting under the Attorney General of the United States, due process requires that the decision to impose that deprivation of an important liberty be made either at a comparable level of government, or if it is to be permitted to be made by the Civil Service Commission, that it be justified by reasons which are properly the concern of that agency.

*Id.* at 116, 96 S.Ct. at 1911 (footnote omitted).

The source and scope of the due process right invoked by the *Mow Sun Wong* Court is not clear. It is beyond question that a legislative body may set eligibility standards for government employment without regard to any constitutionally required procedures. "Where a rule of conduct applies to more than a few people it is impracticable that every one should have a direct voice in its adoption.... General statutes within the state power are passed that affect the person or property of individuals, sometimes to the point of ruin, without giving them a chance to be heard." *Bi-Metalic Investment Co. v. State Board of Equalization,* 239 U.S. 441, 445, 36 S.Ct. 141, 142, 60 L.Ed. 372 (1915) (Holmes, J.). The regulation challenged in *Mow Sun Wong* could have been issued by an appropriate body without any hearing whatsoever. The *Mow Sun Wong* Court did not rely on, and could not have intended to limit the due process right at stake to, matters that require some sort of hearing under the due process clause. *Accord* Sager, *Insular Majorities Unabated,* 91 Harv.L.Rev. 1373, 1416 (1978). Rather, the Court's concern was the denial of some form of substantive due process—a general liberty interest requiring freedom to compete in the job market. *See Mow Sun Wong,* 426 U.S. at 102 & n.23, 96 S.Ct. at 1905; *accord The Supreme Court: 1975 Term,* 90 Harv.L.Rev. 1, 108 (1976).

Neither does the *Mow Sun Wong* decision establish a general principle that limitations of an "aspect" of liberty such as employment opportunities or restrictions on the rights of a suspect class such as aliens require the safeguards of legislative process. The Court clearly contemplated that either the Executive Branch or INS could enact the regulation in question. *See Mow Sun Wong,* 426 U.S. at 116, 96 S.Ct. at 1911; *Vergara v. Hampton,* 581 F.2d 1281, 1286–87 (7th Cir. 1978), *cert. denied sub nom. Vergara v. Chairman,* 441 U.S. 905, 99 S.Ct. 1993, 60 L.Ed.2d 373 (1979). *See generally Olegario v. United States,* 629 F.2d 204, 228–32 (2d Cir. 1980), *cert. denied,* —— U.S. ——, 101 S.Ct. 1513, 67 L.Ed.2d 814 (1981).

or rather participating in the structure of the evolution, of social norms and understandings as they come to find expression in the law." *Id.* at 301. Professor Tribe's approach has been acknowledged favorably by the Second Circuit which has stated that "Motherhood in the context of the discharge of an unwed mother from high school, as considered by Professor Tribe, is an area in which the need to reflect rapidly changing norms affecting important interests in liberty compels an individualized determination, one not bound by any preexisting rule of thumb within the zone of moral change." *Crawford v. Cushman,* 531 F.2d 1114, 1125 (2d Cir. 1976) (Oakes, J.).

Unlike Professor Tribe's unwed teenaged mother, however, the plaintiffs here cannot advance any compelling argument that the determination of whether Connecticut's interest in protecting the potential lives of the unborn should be effected by denying Medicaid payments for abortions requires an individualized determination or consideration by a deliberative legislative body. *Cf. United States Dep't of Agriculture v. Murry,* 413 U.S. 508, 517–19, 93 S.Ct. 2832, 37 L.Ed.2d 767 (1973) (Marshall, J. concurring) (food stamp eligibility); *Geraghty v. United States Parole Commission,* 579 F.2d 238, 259–63 (3d Cir. 1977) (Adams, J.), *vacated,* 445 U.S. 388, 100 S.Ct. 1202, 63 L.Ed.2d 479 (1980) (other grounds), *reasoning rejected in Moore v. Nelson,* 611 F.2d 434, 439 (2d Cir. 1979) (Newman, J.) (parole determination); *Crawford v. Cushman,* 531 F.2d 1114, 1125 (2d Cir. 1976) (Oakes, J.) (suitability for military service); Sager, *Insular Majorities Unabated,* 91 Harv.L.Rev. 1373, 1418–19 (1978) (landowner's property interest).

If *Mow Sun Wong* is read as articulating a due process right, the right must be that of an individual to fair consideration of certain measures adversely affecting him by a governmental body competent to take account of his interest. Professor Sager has stated the proposition as follows:

> What the majority in *Mow Sun Wong* recognized was the right of the plaintiff aliens to have a reasonable determination made by an appropriate tribunal of the federal government that some national interest would be served by the exclusion of aliens from federal employment and that this national interest was sufficiently weighty to override the federal constitutional interest in extending equal treatment to an already disadvantaged class of persons. On this view, *Mow Sun Wong* posits a right to procedural due process which requires that some legislative actions be undertaken only by a governmental entity which is so structured and so charged as to make possible a reflective determination that the action contemplated is fair, reasonable, and not at odds with specific prohibitions in the Constitution.

Sager, *Insular Majorities Unabated*, 91 Harv.L.Rev. 1373, 1414 (1978).

If the Constitution imposes a requirement, in addition to the delegation principles, that limits decisionmaking by administrative agencies, the requirement must be based on the constitutional status of the rights affected by agency action. Thus Professor Sager referred to constitutional rights in his statement of the *Mow Sun Wong* principle. Unlike the plaintiffs in *Mow Sun Wong*, the plaintiffs in this case do not belong to any suspect class and are not subjected by section 275 to a distinction based on a suspect classification. *Harris v. McRae*, 448 U.S. 297, 322, 100 S.Ct. 2671, 2691, 65 L.Ed.2d 784 (1980). This case is therefore unlike several others in which it has been suggested that the institutional incompetence of a decisionmaker with respect to certain issues should be a factor in analysis. *E. g., Fullilove v. Klutznick*, 448 U.S. 448, 548–554, 100 S.Ct. 2758, 2811–14, 65 L.Ed.2d 902 (1980) (Stevens, J., dissenting) (race); *Regents of the University of California v. Bakke*, 438 U.S. 265, 307–10, 98 S.Ct. 2733, 2757–58, 57 L.Ed.2d 750 (1978) (opinion of Powell, J.) (race). Neither have they suffered deprivation of any substantive right under the fourteenth amendment. *McRae* at 448 U.S. at 313–327, 100 S.Ct. at 2686–2694. The plaintiffs have not identified any right that has been denied; they only argue that the wrong decisionmaker made what is conceded to be a substantively permissible decision.

Not even the broadest authority relied upon by the plaintiffs supports the above position. Professor Tribe has attempted to develop a theory of "structural justice" that requires a court to consider the institutional role of a decisionmaker as an element of substantive constitutional decisions. The level of scrutiny by which a decision is reviewed, and especially the extent to which a court should require an individualized justification for each application of a rule or regulation, may depend on the institutional characteristics of the decisionmaker. *See generally* L. Tribe, *American Constitutional Law* §§ 17–1, 17–2 (1978). The purpose of a concern with structure, however, is not to create constitutional rights where none existed or were perceived before, but rather to more adequately enforce recognized rights. Thus, Professor Tribe has stated:

> [A] constitutional model designed to match decision structures with substantive human ends might seem indistinguishable from the models already set forth [e. g. substantive due process, equal protection]. Yet if such a model were to . . . seek[ ] to achieve such ends as human freedom not through any *one* characteristic structure of choice but through that *combination* of structures that seems best suited to those ends *in a particular context*, then the model might indeed prove distinct . . . .

Tribe, *American Constitutional Law* § 17–1 at 1136 (1978) (emphasis in original).

■ For this court, it is established by *Harris v. McRae* that a decision to deny

Medicaid payments for certain abortions impairs no substantial constitutional value. The only constitutional value that could arguably be advanced by requiring legislative rather than administrative action is that of separation of powers—which does not extend to the states. *Highland Farms Dairy, Inc. v. Agnew*, 300 U.S. 600, 612, 57 S.Ct. 549, 551, 81 L.Ed. 835 (1937). In other respects, the Commissioner's decision in this case is not different than the state legislature's decision in *Williams v. Zbaraz.* The regulation is no more arbitrary, overinclusive in its fit between state purpose and individual circumstance or detrimental to the exercise of a protected right in one case than the other.

For the reasons stated above, the plaintiffs' complaint no longer states a provable claim under the due process clause of the fourteenth amendment and must be dismissed.

## II. THE THIRD PARTY DEFENDANT'S MOTION TO DISMISS

After this court issued a temporary restraining order on July 17, 1979, preventing enforcement of section 275, the state defendants filed a third-party complaint against the United States Department of Health, Education and Welfare and its Secretary, Patricia Harris. The third-party complaint seeks reimbursement for any expenditures ordered by this court to fund abortions for which federal funds are unavailable under the Hyde Amendment. The merits of the third-party complaint were not litigated at the same time as the main claim. After this court permanently enjoined enforcement of section 275 on January 7, 1980, the third-party plaintiff did not press its motion for a preliminary injunction to order reimbursement because the United States District Court for the Eastern District of New York issued an injunction on January 15, 1980 requiring the federal government to make such payments throughout the nation. *McRae v. Califano,* 491 F.Supp. 630, 742 (E.D.N.Y.), *rev'd sub nom. Harris v. McRae,* 448 U.S. 297, 100 S.Ct. 2671, 65 L.Ed.2d 784 (1980); *see Har-*

*ris v. McRae,* 448 U.S. 297, 304, 100 S.Ct. 2671, 2681, 65 L.Ed.2d 784 (1980). These payments began on February 19, 1980, and continued until the *McRae* injunction was vacated on September 19, 1980. The injunction that had been entered by this court, however, ordering the third-party plaintiff to fund abortions for which federal funds are unavailable under the Hyde Amendment, remained in effect until December 16, 1980. The third-party plaintiff, therefore, has not been reimbursed for expenditures made between July 17, 1979 and February 18, 1980, and between September 20, 1980 and December 16, 1980.

The third-party defendant now moves that the complaint against it be dismissed for failure to state a cause of action and for failure to exhaust administrative remedies.

### A. *Exhaustion of Remedies*

The defendant claims that the third-party plaintiff should pursue a remedy under 42 U.S.C. § 1316(d) (1976) which in relevant part provides:

Whenever the Secretary determines that any item or class of items on account of which Federal financial participation is claimed under subchapter ... XIX ... shall be disallowed for such participation, the State shall be entitled to and upon request shall receive a reconsideration of the disallowance.

Administrative reconsideration of a disallowance is a prerequisite for judicial review, *Wingate v. Harris,* 501 F.Supp. 58, 63–64 (S.D.N.Y.1980), unless the Department's position on the issue in question has been made so clear by its previous actions that administrative proceedings would be obviously futile. *Reser v. Califano,* 467 F.Supp. 446, 449–50 (W.D.Mo.1979).

Although the Department may not have issued an opinion on the issue presented, the pursuit of an administrative remedy under section 1316(d) would be obviously futile in this case. Federal law prohibits the expenditure the State of Connecticut is seeking. *See generally Harris v. McRae,* 448 U.S. 297, 100 S.Ct. 2671, 65

L.Ed.2d 784 (1980). Furthermore, even if the Department has the power to grant the third-party plaintiff's request, a section 1316(d) reconsideration would not be the proper procedure. That section applies only when the Department denies reimbursement for items included within a previously approved state plan on the basis of audit exceptions. *See generally* 45 C.F.R. §§ 201.10–201.14 (1980); *Wingate v. Harris*, 501 F.Supp. 58, 63 (S.D.N.Y.1980); *see also State Department of Public Welfare v. Califano*, 556 F.2d 326, 328–29 (5th Cir. 1977), *cert. denied*, 439 U.S. 818, 99 S.Ct. 78, 58 L.Ed. 108 (1978) (predecessor regulation). Connecticut's approved plan did not include provision for the payments ordered by this court, and the Department is not attempting to deny reimbursement because of deficiencies found in an audit. This dispute is more similar to those handled under section 1396c, concerning a finding by the Secretary, after notice and hearing, that a state plan is not being operated in accordance with relevant federal law. In any event, however, the administrative forum is not proper for a determination of whether the federal government should be required to reimburse a state for payments not required by the state's plan or by any federal statute, but ordered by a court as a result of a finding that the state's policy violated the Constitution.

## B. *Failure to State a Claim*

Whether or not the third-party plaintiff's claim should have been reviewed by an administrative tribunal, it is obvious that the claim is without merit. Each count of the third-party complaint relies on the federal government's obligations under 42 U.S.C. § 1396 *et seq.* This court ruled, when it issued the permanent injunction, that section 1396 does not require payments for abortions for which payments are not available under the Hyde Amendment. *Women's Health Services v. Maher*, 482 F.Supp. 725, 728–30 (D.Conn.1980), *vacated and remanded*, 636 F.2d 23 (2d Cir. 1980) (other grounds). The Supreme Court has since reached the same conclusion by somewhat different reasoning. *Harris v. McRae*, 448

U.S. 297, 306–314, 100 S.Ct. 2671, 2683–86, 65 L.Ed.2d 784 (1980). The State of Connecticut cannot argue successfully that the Medicaid Act requires the federal government to pay for abortions excluded by the Hyde Amendment.

The third-party plaintiff appears to advance a new argument now, apparently asking the court to acknowledge that the reasoning that justified its January 1980 decision that section 275 was unconstitutional would have also justified a decision that the Hyde Amendment was unconstitutional. The plaintiffs ask this court to hold the defendants bound by this hypothetical judgment. This argument is also without merit. It is possible that this court would have found the Hyde Amendment unconstitutional had the third-party plaintiff pressed its motion for a preliminary injunction. The issue, however, was never presented. The third-party plaintiff is now bound by its previous decision not to press the issue. Although the Supreme Court stated that "if Congress chooses to withdraw federal funding for a particular service, a State is not obliged to continue to pay for that service," *id.* at 309, 100 S.Ct. at 2684, the Court's discussion was directed only at the requirements the Medicaid Act imposes on the states, not at independent requirements such as those imposed by this court.

The third-party complaint must therefore be dismissed for failure to state a claim upon which relief can be granted.

### Summary

The state defendants' motion to dismiss is granted for failure to state a cause of action. Fed.R.Civ.P. 12(b)(6). The federal third-party defendant's motion to dismiss is granted for failure to state a cause of action. *Id.*

SO ORDERED.